**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 02-70359 |
| | § | |
| ROBERT AND ANNA CANO | § | CHAPTER 13 |
| | § | |
| DEBTORS. | § | |
| | § | |
| ROBERT AND ANNA CANO | § | |
| and all those similarly situated, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| GMAC MORTGAGE CORP. | § | ADVERSARY NO. 08-7019 |
|     Defendant | § | |
| | § | |

**PLAINTIFFS' RESPONSE TO GMAC MORTGAGE CORP.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION
AND FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW, Robert and Anna Cano, and all others similarly situated, and file this, their Response to GMAC Mortgage Corp.'s Motion to Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim and Brief in Support, and, in support thereof, would respectfully show the Court as follows:

Plaintiffs filed this suit on May 19, 2008. GMAC filed its motion to dismiss this adversary proceeding (the "First MTD") on June 20, 2008. GMAC also filed a motion to withdraw the reference on July 11, 2008. Plaintiffs filed a response on September 5, 2009. A hearing on both motions was held on November 10, 2008.

At the hearing, Plaintiffs confirmed that they were withdrawing all claims based on the Fair Debt Collection Practices Act ("FDCPA"). On April 3, 2009, the Court issued its opinion on GMAC's motion to withdraw the reference, recommending against withdrawal. Docket No. 37.

On April 19, 2009, Plaintiffs filed their First Amended Complaint, Docket No. 39, in order to remove the FDCPA claims for a clean record. The First Amended Complaint is identical to the Original Complaint, except for the removal of references to the FDCPA.

On April 29, 2009, GMAC filed a motion to dismiss the First Amended Complaint. ("Second MTD"). Docket No. 41. The Second MTD appears to be identical to the First MTD, except for the deletion of arguments about the FDCPA.

The portion of this response beginning on page 3 is virtually identical to Plaintiffs' response filed on September 5, 2009, except this response in turn deletes reference to the FDCPA and updates by deletion or insertion certain case citations. In addition, this response has been amended so that references here are to the correct page numbers of GMAC's Second MTD.

However, Plaintiffs must point out that since the parties first briefed these issues last year, this Court has issued opinions that resolve almost all of the arguments made by GMAC in favor of Plaintiffs. *See Rodriguez v. Countrywide Home Loans, Inc.*, 396 B.R. 436 (Bankr. S.D. Tex. 2008); Report and Recommendation, *Cano v. GMAC Mortgage Corp. (In re Cano)*, Adversary Proceeding No. 08-7019 (Bankr. S.D. Tex.), Docket No. 37. Plaintiffs cite those opinions as additional authority for their arguments made initially and repeated here.

# I.
# INTRODUCTION

This is a class action for damages, sanctions and declaratory/injunctive relief.  Plaintiffs allege that GMAC Mortgage Corp. ("GMAC") has consistently and systematically flouted the mandates of the United States Bankruptcy Code (the "Code"), the Bankruptcy Rules (the "Rules") and the orders of the nation's bankruptcy courts by charging and collecting unauthorized fees, failing properly to account for mortgage payments in bankruptcy and refusing to recognize the courts' discharge orders.  In so doing, GMAC and other mortgage lenders have illegally collected millions of dollars and impaired or destroyed the lives of thousands of borrowers.  By this suit, Plaintiffs seek relief for GMAC's violation of the protections of the Code and confirmed Chapter 13 plans.

As this Court is no doubt well-aware, GMAC is not alone in its disregard for the Code.  The mortgage lenders have unilaterally elevated themselves above the carefully-crafted, comprehensive scheme enacted by Congress to enable borrowers to restructure their debt, save their homesteads from foreclosure and provide them with a fresh start.  Finding the Code bothersome, and, more importantly, detrimental to their profits, these lenders simply ignore it.  Even more troubling, they openly defy the courts to stop them.  For years, these lenders have denied the power of the bankruptcy courts to exercise jurisdiction over such claims and to grant relief under the Code.  Now, when challenged, GMAC objects to the court's jurisdiction and denies its power to grant relief. Joining the well-rehearsed chorus of lenders across the country, GMAC intones that the courts have no jurisdiction over the debtors' claims and that the Code provides no relief whatsoever to the debtors whose lives they have ruined.

For all its bluster, nowhere in GMAC's Motion to Dismiss does it make any effort to defend its conduct. To the contrary, GMAC moves for dismissal solely based upon the contention that the Court lacks subject matter jurisdiction and the Code does not empower the Court to act. Essentially, GMAC asks the Court to adopt its longstanding worldview under which a mortgage lender can disregard every statute in the Code -- including the deficiency-curing provisions of Chapter 13 -- and the orders of the country's bankruptcy courts, by adding thousands of dollars in hidden and undisclosed fees during the bankruptcy case, springing them on newly-discharged consumers and then foreclosing on their homes when they refuse to pay. This not the law.

To the contrary, the United States Court of Appeals for the Fifth Circuit has long held that the Code provides debtors with a "federal cause of action" to enforce core rights created by the Code and that the federal courts have jurisdiction over such claims. *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgt. Corp. (In re Nat'l Gypsum)*, 118 F.3d 1056, 1064 (5th Cir. 1997). Not once, in its forty-one pages of briefing does GMAC cite *Nat'l Gypsum*. Even more telling, GMAC scarcely acknowledges that this Court has already instructed that lenders may not collect fees from debtors in bankruptcy without court approval. *Padilla v. Wells Fargo Home Mortgage, Inc.*, 379 B.R. 643, 670 (Bankr. S.D. Tex. 2007). Rejecting many of the same arguments advanced by GMAC in this case, this Court specifically found that it had jurisdiction over the plaintiffs' claims and that the Code had the power to disgorge unlawfully-collected fees. *Id.* at 670. The consumers of this country, the Court concluded, are not so "defenseless against abusive charges by their mortgage lenders." *Id.* As a result and for the reasons demonstrated herein, the Court should deny GMAC's Motion to Dismiss.

# II.
# STANDARD OF REVIEW

The United States Supreme Court recently reaffirmed that Rule 8, Fed. R. Civ. P., "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007).  In order to sustain this burden, the plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.  Stated differently, the complaint must state more than the "metaphysical possibility that some plaintiff somewhere could prove some set of facts in support of the pleaded claims" and instead "give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Significantly, *Twombly* does not impose a "heightened pleading standard," *Twombly*, 127 S. Ct. at 1974, or require "detailed factual allegations," *Interspan Dist. Corp. v. Liberty Ins. Underwriters*, 2008 U.S. Dist. LEXIS 26259, at *18-23 (S.D. Tex. 2008).   Likewise, courts applying *Twombly* continue to recognize the need for caution before dismissing a complaint prior to even preliminary discovery.  *See, e.g., Rutter v. Picerne Dev. Corp.*, 2007 U.S. Dist. LEXIS 90690 (S.D. Fla. 2007).  Thus, when a pleaded claim requires a "detailed, fact-driven analysis," prior to discovery, it is inappropriate to dismiss the case under Rule 12(b)(6).  *Id.* at *7-8.  In *Rutter*, for example, the court refused to dismiss a Title VII complaint because the court could not possibly determine whether the defendant was an "employer" under the integrated enterprise analysis prior to discovery.  *Id.*

In considering a challenge to the court's exercise of subject matter jurisdiction, the burden of proof lies with the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Id.; Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Likewise, a motion to dismiss for failure to state a claim is viewed with disfavor and should only rarely be granted. *Roberts v. Postmaster General*, 947 F. Supp. 282, 284 (E.D. Tex. 1996). In reviewing such motions, the court presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *Truman v. United States*, 26 F.2d 592, 594 (5th Cir. 1994). The rule does not countenance dismissals based on disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 325, 327 (1989).

### III.
### AUTHORITIES & ARGUMENT

A.    **Subject Matter Jurisdiction**

1.    **This Court has subject matter jurisdiction over Plaintiffs' claims.**

Title 28 U.S.C. § 1334 (West 2008) expressly confers jurisdiction over bankruptcy matters on federal district courts of the United States. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 91 (5th Cir. 1987). The bankruptcy court's jurisdiction is derived from the jurisdiction granted to the district court. *Id.* In particular, 28 U.S.C. § 1334 grants to the district court "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* at 91

§ 1334(a)-(b).  Thus, district courts have exclusive jurisdiction over the bankruptcy petition itself and non-exclusive jurisdiction over "civil proceedings" that (1) "arise under" title 11, (2) "arise in" a case under title 11 or (3) are "related to" a case under title 11.

As noted in *Wood*, the phrase "arising under title 11" describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11.  *Id.* Proceedings "arising in" are those that are not based on any right expressly permitted by title 11, but which nevertheless would have no existence outside of the bankruptcy.  *Id.* These proceedings are "core" proceedings.  *Id.* at 98.  An action is "related to" the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action and which in any way impacts upon the handling and administration of the bankruptcy estate.  *EOP-Colonnade of Dallas, Ltd.  P'ship v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260, 266 (5th Cir.  2005).

GMAC affirmatively misstates the law in the Fifth Circuit.  Second MTD p. 5-7.  On page six of its motion to dismiss, GMAC states "Subsection (b) of section 1334 confers upon district courts 'original but not exclusive jurisdiction of all civil proceedings. . .related to cases under title 11.'  28 U.S.C. § 1334(b)."  GMAC conveniently leaves out the words "arising in, arising under" in 28 U.S.C. § 1334(b).  GMAC specifically tries to mislead the Court by arguing that the test for "related to" jurisdiction is the test for *all* jurisdiction under 11 U.S.C. § 1334.[1]  Second MTD, p. 5-7.  The  Court should not countenance such sleight of hand.  The court does not even need to consider

_____

[1]The case cited by GMAC for the proposition that both prongs must be met were *all* applying such tests to "related to" jurisdictions. *See Bass v. Denny (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999) (garnishment action brought to collect on an agreed judgment from a trust of debtor); *Wood v. Wood (In re Wood)*, 825 F.3d 90, 93-94 (5th Cir. 1987) (action seeking damages for wrongful stock issuance in violation of agreement); *Feld v. Zale (In re Zale Corp.)*, 62 F.3d 746, 751-755 (5th Cir. 1995) (third party action between noncreditors and a nondebtor).

**PLAINTIFFS' RESPONSE TO GMAC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - Page 7**

the "related to" jurisdictional test, as the Court has jurisdiction because Plaintiffs' claims are core proceedings that "arise under" cases under title 11.  *See* 28 U.S.C. § 1334(b).

Indeed, as in *Noletto v. Nationsbank Mort. Corp.  (In re Noletto)*, 244 B.R. 845 (Bankr. S.D. Ala. 2000), this class action clearly fits within the plain language of the "arising under" or "arising in" jurisdictional categories, because all of Plaintiffs' claims will be determined from rights created by the Bankruptcy Code.  *See id.* at 849; Elizabeth Warren and Jay L. Westbrook, Class Actions for Post-petition Wrongs: National Relief Against National Creditors, Warren and Westbrook on Bankruptcy, 22-2 ABIJ 14, 47 (March 2003) (hereafter, "Warren and Westbrook").  Such rights are "at the core of the federal bankruptcy power."  *Wood*, 825 F.2d at 96.  Because Plaintiffs' claims involve substantive rights provided by title 11, they are "core" proceedings that "arise under" title 11, thus this Court has subject matter jurisdiction pursuant to 11 U.S.C. § 1334.

> **2.     This Court has jurisdiction to enforce a debtor's fundamental protections under the Code, even if there is no "property of the estate."**

GMAC argues that the Court lacks subject matter jurisdiction because Plaintiffs' claims can have "no conceivable effect" on his bankruptcy estate because (1) Plaintiffs exempted their homestead property from the estate; and (2) there is no "property of the estate" since Plaintiffs have been discharged.  Second MTD, p. 7-10.  In truth, Plaintiffs raise core claims about rights that are specifically protected by the Code and the Rules.  As such, it matters not that they have been discharged or that their homestead was exempt or otherwise deemed not "property of the estate."  Even after discharge in a Chapter 13 case, the courts retain jurisdiction to enforce the core rights provided by the Code and the core purposes of the Code, including ensuring that mortgage lenders do not deprive Chapter 13 debtors of the fresh start to which they are entitled.  *Padilla*, 379 B.R. at

653; *see also IRS v. Luongo (In re Luongo)*, 259 F.3d 323, 332 (5th Cir. 2001); *United States v.*

*Miller*, 2003 U.S. Dist. LEXIS 24884, at *14 (N.D. Tex. Dec. 22, 2003).

Indeed, this Court has expressly held that the federal courts have jurisdiction over precisely

the type of claims alleged here even if the debtor has been discharged and there is no longer an

estate.   *Padilla*, 379 B.R. at 643*; Prado v. Cash Am. Advance, Inc. (In re Prado)*, 340 B.R. 574

(Bankr. S.D. Tex. 2006).  *In Prado*, the court explained:

> When a lawsuit asserts that one of a debtor's fundamental bankruptcy protections was
> violated by a creditor, the Court's subject matter jurisdiction continues after the
> dismissal of the case. Indeed, the Court has no discretion with respect to whether it
> will consider matters that are within its subject matter jurisdiction.  The Court's duty
> to consider cases within its subject matter jurisdiction is unflagging.

*Id.* at 578-79; *see also In re Bradley*, 989 F.2d 802, 804 (5th Cir. 1993); *England v. Louisiana State*

*Bd. of Med. Exam'rs*, 375 U.S. 411, 84 S.Ct. 461, 11 L. Ed. 2d 440 (1964); *Great Atl. & Pac. Tea*

*Co. v. Gillis*, 78 Fed. Appx. 329 (5th Cir. 2003).

In *Padilla*, 379 B.R. at 643, this Court "carefully considered its own subject matter

jurisdiction" in the face of a strikingly similar objection by GMAC.  *Id.* at 652-53.   In determining

that it had jurisdiction under 28 U.S.C. §1334, the Court stated:

> The Fifth Circuit has also found that after a bankruptcy case is closed, subject matter
> jurisdiction remains in the Bankruptcy Court to assure that the rights afforded to a
> debtor by the Bankruptcy Code are fully vindicated.  In [*In re Bradley*, 989 F.2d 802
> (5th Cir. 1993)], the Court held that the alleged post-discharge employment
> discrimination against a debtor under 11 U.S.C. § 525 mandated that the Court
> exercise its subject matter jurisdiction. This case is analogous.  If a lender could wait
> until the conclusion of a bankruptcy case - and then impose disallowed charges - the
> debtor's fresh start would not be fresh at all.  It is a well-recognized that a fresh start
> is fundamental purpose of current bankruptcy law.

*Padilla,* 379 B.R. at 352-53; see also *Harris v. Fid. Nat'l Info. Servs. (In re Harris)*, 2008 Bankr.

LEXIS 1072, at *6, n. 2 (Bankr. S.D. Tex. April 4, 2008) ("Moreover, even if the Debtors had

completed their plan and there was no longer an estate, this Court would still have jurisdiction over this suit . . . because the cause of action related to the implementation and execution of the plan.").

    **3.**      **The Fifth Circuit has rejected the "exempt property" argument of *Graziadei*.**

    GMAC relies extensively on the 1994 case of *Graziadei v. Graziadei (In re Graziadei)*, 32 F.3d 1408, 1410 (9th Cir.1994), for its assertion that the Court has no jurisdiction over exempt property.  Second MTD, p 8-10.  Noticeably absent from its briefing, however, is the fact that the Fifth Circuit rejected the "exempt property" jurisdictional analysis based on Graziadei in *IRS v. Luongo (In re Luongo)*, 259 F.3d 323, 336 (5th Cir. 2001).  In *Luongo*, after the debtor's discharge, the IRS setoff her overpayment against a discharged tax liability.  The debtor moved to reopen her case, and then amended her schedules to exempt the income tax overpayment. The IRS argued that the bankruptcy court had no jurisdiction because the tax refund was "exempt" and the dissent, relying in part on *Graziadei*, agreed.  *Id.* at 339 (Garza, J. dissenting).

    However, the majority rejected that argument.  *Id.* at 328, 330, n. 4.  The Fifth Circuit reemphasized that (1) the court cannot view any Code provision in isolation without considering the other goals of the Bankruptcy Code, and (2) it is important for the bankruptcy court to exercise its jurisdiction to protect the debtor - not just estate property that will go to creditors.  *Id.* at 330-32.  The court held that  "where bankruptcy issues predominate and the Code's objectives will potentially be impaired, bankruptcy courts should generally exercise jurisdiction."  *Id.*  The court noted that the bankruptcy courts' objective included "protecting the debtor's right to a fresh start."  *Id.* (*citing In re Henderson*, 18 F.3d 1305, 1307 (5th Cir. 1994) (recognizing "the Bankruptcy Code's important objective of allowing the debtor to gain a fresh start in his financial life" ).

In this case, Plaintiffs allege that GMAC has taken actions in violation of the Code that have severely impaired and are destroying their right to a fresh start.   Both the Fifth Circuit and this Court have recognized federal court jurisdiction over such matters and the imperative for the courts to exercise that jurisdiction.

With respect to homestead property, this Court already has held that it has subject matter jurisdiction over matters related to a debtor's exempt homestead.   *Villarreal v. Showalter (In re Villarreal)*, 2008 Bankr. LEXIS 694 at *23 (Bankr. S.D. Tex. March 14, 2008) (the fact that the debtors claimed the property as their homestead weighed *in favor* of the Court retaining the matter). *Hallmark Capital Group, L.L.C. v. Pickett (In re Pickett)*, 362 B.R. 794, 794-97 (Bankr. S. D. Tex. 2006) (core proceedings include the determination of liens on property of the debtor, as well as property of the estate - court has jurisdiction to determine lien-avoidance action on debtor's homestead).

**B.    This Court has jurisdiction over claims of debtors whose cases were or are pending in other judicial districts.**

GMAC asserts that this Court does not have subject matter jurisdiction over the claims of class members outside of the Southern District of Texas, and urges this Court to follow a minority of old cases with similar reasoning.   Second MTD, p. 10-12.   However, other courts and scholars have analyzed these opinion and found them lacking.[2]   In so doing, GMAC completely ignores the *numerous* opinions upholding the exercise of federal jurisdiction over a nationwide class of debtors

---

[2]*See* Robert P. Wasson, "Article: Remedying Violations of the Discharge Injunction Under Bankruptcy Code 524, Federal and Non-Bankruptcy Law and State-Law Comports with Congressional Intent, Federalism and Supreme Court Jurisprudence for Identifying the Existence of an Implied Right of Action, 20 Bankr. Dev. J. 77 (2003) (hereafter, "Wasson").   In the Wasson article, the author analyzes in great depth *Noletto, Bank United* and other cases relied on by Plaintiffs, as well as cases and reasoning relied on by GMAC, and systematically refutes the arguments and reasoning of *Wiley v. Mason*, 244 B.R. 687 (Bankr.  N.D. Ill.  1998), and other opinions relied on here by GMAC. The author concludes that both *Noletto* and *Bank United* are correct and that bankruptcy courts have jurisdiction over nationwide class actions of the type brought in this case.  *See* Wasson, 20 Bankr. Dev. J. at 158 - 187.

alleging claims similar if not identical to those alleged here.   *See, e.g. Harris v. Wash. Mut. Home Loans, Inc. (In re Harris)*, 297 B.R. 61 (Bankr. N.D. Miss. 2003); *Powe v. Chrysler Fin. Corp., LLC (In re Powe)*, 278 B.R. 539, 280 B.R. 728 (Bankr. S.D. Ala. 2002); *Kerney v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457 (Bankr. E.D. Tenn. 2002); *Bank United v. Manley*, 273 B.R. 229 (N.D. Ala. 2001); *Sheffield Homeside Lending, Inc. (In re Sheffield)*, 281 B.R. 24 (Bankr. S.D. Ala. 2000); *Noletto v. Nationsbanc Mortgage Corp. (In re Noletto)*, 244 B.R. 845 (Bankr. S.D. Ala. 2000); *Fleet v. U.S. Consumer Council, Inc. (In re Fleet)*, 53 B.R. 833 (Bankr. E.D. Pa. 1985).   *Cf. Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 185-86 (D. Mass. 1988) (district and bankruptcy court judges sitting jointly certified nationwide class for settlement purposes); *Coggin v. Sears, Roebuck & Co., (In re Coggin)*, 155 B.R. 934 (Bankr. E.D. N. C. 1993) (court found it had subject matter jurisdiction over class action consisting of debtors from Eastern and Middle Districts of North Carolina). Indeed, "the more recent and better reasoned authority demonstrates that the Court has jurisdiction over all class claims in this action." *Tate v. Nationsbanc Mortgage Corp. (In re Tate)*, 253 B.R. 653, 663 (Bankr. W.D. N.C. 2000).

In *Noletto*, 244 B.R. 845, for example, after extensive analysis, Judge Mahoney of the Bankruptcy Court for the Southern District of Alabama found that she had subject matter jurisdiction over all the potential class members' lawsuits in a suit for alleged nationwide abuses of the Bankruptcy Code. *Noletto*, 244 B.R. at 848.  In so holding, Judge Mahoney carefully considered and expressly rejected the very arguments now raised by GMAC in support of its Motion to Dismiss.

In fact, the First Circuit has held that a federal court had subject matter jurisdiction over a nationwide class of debtors for the "wrongful and supposedly common practice by certain creditors of coercing naive and inexperienced debtors into reaffirming debt that has been properly discharged

in bankruptcy." *Bessette v. Avco Fin. Servs. Inc.*, 230 F.3d 439, 446 (1st Cir. 2000). In so holding, the appellate court rejected the district court's conclusion that although "the alleged practices [of defendant] appear to abuse the carefully designed bankruptcy laws," the court could not fashion relief for all the plaintiffs because sanctions for violations of an injunction usually are administered by the court that issued the injunction. *Id.* at 445. The First Circuit expressly noted that *Bessette* sought enforcement of the *statutory* injunction set forth in § 524, not one individually crafted by the bankruptcy judge, in which that judge's insights and thought processes might be of particular significance. *Id.* at 445-46. "Thus, few of the practical reasons for confining contempt proceedings to the issuing tribunal apply here." *Id.* The Court explained,

> As a district court sitting in bankruptcy is similarly authorized to invoke its equitable powers under § 105 when necessary to carry out the provisions of the Bankruptcy Code, we reverse the district court's holding that [Bessette] could only bring her claims in the court that issued the original discharge order and remand for the district court's consideration and enforcement of § 524 through § 105.

*Id.* at 446. In recognition of the district court's discretion, the *Bessette* court noted that the bankruptcy court could also exercise jurisdiction over a nationwide class of debtors:

> [S]hould the district court refer the case to the bankruptcy court, appellant's ability to pursue her class action remains. Not only does the bankruptcy court have the power to utilize § 105 in enforcing § 524, it is also empowered to maintain class actions and may be able to provide much the same kind of relief, in appropriate situations, as the district court itself.

*Id.* at 446 (citing Fed. R. Bankr. P. 7023 (importing Fed R. Civ. P. 23 into "adversary proceedings")).

Leading commentators agree. "There is no reason that [national class actions] should be denied to debtors in bankruptcy because of confusion about the national scope of bankruptcy law. If national creditors are to escape compensating those whom they have illegally harmed, it should

not be on these grounds."  Elizabeth Warren & Jay L. Westbrook, "Class Actions for Post-Petition Wrongs: National Relief Against National Creditors," 22 Am. Bankr. Inst. J. 47 (2003) ("Warren & Westbrook").  Citing with approval *Noletto* and other similarly-reasoned opinions, Professors Warren and Westbrook conclude that if a class action under Rule 23, Fed. R. Civ. P., is otherwise appropriate against lenders who violate the Code, the class need not be limited to debtors in cases pending in the district where the action is brought.  *Id.*  When a creditor acts consistently against a number of debtors in bankruptcy in a way that violates the Code, they conclude, certification of a nationwide class may be appropriate. *Id.* at 47.  Indeed, such jurisdiction is appropriate because otherwise there might be no affordable universal redress for creditor bankruptcy abuses, such as those clearly present in this case.  *See id.*  *See also Bank United v. Manley*, 273 B.R. 229, 249-250 (N.D. Ala. 2001)

Similar reasoning applies here. Plaintiffs seek relief for violations of the automatic stay, sections of Chapter 13 of the Code, § 506 and Rule 2016, all of which codify rights and duties created by statute.  As such, class members may bring their claims other than in their "home courts" and this Court may enforce the provisions sued on through its equitable powers under § 105.  *See id.; Davis v. Retail Fin. Co. of Texas, Inc.*, 2006 Bankr. LEXIS 2601 (Bankr. S.D. Tex. 2006) (court had subject matter jurisdiction over the discharge-injunction claims of a debtor whose bankruptcy case was pending in the Northern District of Texas because the discharge injunction was created statutorily).

This analysis also shows that GMAC's referral argument is a red herring. The claims asserted herein are core actions derived from rights conferred by the Bankruptcy Code itself and thus have been referred to this Court under the general reference order.  Certainly in *Davis*, the debtor's main

bankruptcy had been "referred" to the Bankruptcy Court for the Northern District of Texas.  *See Davis*, 2006 Bankr.  LEXIS 2601.  Nevertheless, the Bankruptcy Court for the Southern District of Texas had subject matter jurisdiction over the discharge-injunction claims of the debtor because such claims were core.[3]  *See id.*

### 1.     The proceeding need not have an "effect on the estate" for the court to have subject matter jurisdiction.

GMAC argues that this Court has no jurisdiction over absent members' claims because such claims will have "no conceivable effect" on any debtor's estate being administered by this Court. Second MTD, p. 12.  However, GMAC wrongly suggests that the estate itself must be impacted for any proceeding to relate to, and therefore to be cognizable in, bankruptcy. *See Bank United*, 273 B.R. at 237-38 (providing extensive analysis).  As noted, GMAC is purposely confusing § 1334(b) bankruptcy jurisdiction and the core/non-core distinction of 28 U.S.C. § 157. However, as discussed, these aspects of bankruptcy law *are not* interchangeable. *Id.* at 238; *Noletto*, 244 B.R. at 855 (whether a proceeding is core is analytically separate from whether there is jurisdiction) (*citing Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345, n. 6 (11th Cir. 1999)); *Kaiser Aerospace and Elecs. Corp. v. Teledyne Indus. (In re Piper Aircraft)*, 244 F.3d 1289, 1303 n. 9 (11th Cir.2001) ("Whether an issue is core relates to how jurisdiction is exercised ... rather than

---

[3]For its "referral" argument, GMAC cites Corrine Ball & Micelle J. Meises, "Current Trends in Consumer Class Actions in the Bankruptcy Arena," 56 Bus. Law. 1245, 1256 (May 2001) (hereafter, "Ball & Meises").  The arguments in that paper were specifically rejected by the bankruptcy court when it denied GE's motion to dismiss in *Hagar v. GE Capital Mortgage Services, Inc. (In re Hagar)*, Ch 13 Case No. 97-97-72801-CMS, Adv Proc. No. 99-70092 (Bankr. N.D. Ala. June 30, 2000), a nationwide class action.  The authors were representing GE.  *See* Ball & Meises, 56 Bus. Law 1245 at *1. Six months after the article was published, the United States District Court for the Northern District of Alabama *upheld* the bankruptcy court's ruling denying the motions to dismiss in Hagar and three other related nationwide class actions (against Countrywide, Fleet, and First Nationwide Mortgage) in the consolidated appeal in *Bank United v. Manley* on November 29, 2001.  The opinion rejected the arguments that are set forth in the Ball & Meises article.  *Bank United v. Manley*, 273 B.R. 229 (N.D. Ala. 2001)(Ball, Corrine on behalf of GE Capital Mortgage Services, Inc.).

whether jurisdiction exists.").  Indeed, GMAC's argument that the absent class members' claims are

not "related to" the individual debtors in this Court ignores the language of "arising under" or

"arising in" a case under title 11.   Section 1334(b) is phrased disjunctively. The three categories

offer alternative bases of bankruptcy jurisdiction. *Noletto*, 244 B.R. at 849.  As explained by the

*Bank United* court:

> The conceivable limits of bankruptcy jurisdiction, therefore, must embrace matters
> beyond those simply affecting the estate.  Proceedings affecting a debtor's rights,
> liabilities, options, or freedom of action are also valid proceedings cognizable by
> bankruptcy courts when they arise under the Bankruptcy Code.  To contend
> otherwise strips the debtor of certain authorized (and perhaps implied) causes of
> action, and eliminates specific grants of jurisdiction.
>
> [A]n action is related to bankruptcy if the outcome could alter the debtor's rights,
> liabilities, options, or freed of action (either positively or negatively) and which in
> any way impacts upon the handling and administration of the bankrupt estate.
> Conversely, "*bankruptcy courts have no jurisdiction over proceedings that have no
> effect on the debtor.*"*In re Walker*, 51 F.3d at 569 (quoting *Celotex Corp. v.
> Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 131 L.Ed. 2d 403 (1995) (emphasis
> added.)).

*Bank United,* 273 B.R. at 232-244 (affirming certification of nationwide class of debtors challenging

mortgage overcharges).

### 2.    The class members' "home" bankruptcy courts do not have exclusive jurisdiction over the claims.

GMAC argues that the bankruptcy court of each class member has "exclusive" jurisdiction

over those class members' bankruptcies under 28 U.S.C. § 1334(e).  Second MTD, p.  5,  GMAC

is wrong. Both Judge Mahoney in Noletto, 244 B.R. at 845, and Judge Nelson in *Bank United,* 273

B.R. at 229, provided an extensive analysis of the conflicts between 11 U.S.C. § 1334(e) and the

venue, removal and jurisdictional statutes. They found that § 1334(e) does not require issues of

liability to take place solely before the "home" court. Rather, jurisdiction is shared between home

courts and other courts, leaving the adjudication of certain claims to either. *Bank United,* 273 B.R. at 247; *Noletto,* 244 B.R. at 853-54; Warren & Westbrook at 46-47 (noting that the stay is a statutory provision rather than a court order and concluding that it represents a "federal right to be enforced by a federal court.").

Further, numerous bankruptcy courts have held that they have subject matter jurisdiction over debtors who sought to redress lenders' widespread abuses of the Code. *See, e.g., In re Harris*, 297 B.R. at 73 (asserting jurisdiction over nationwide late-fee class); *Slick v. Norwest Mortgage, Inc. (In re Slick)*, 2002 Bankr. LEXIS 772 (Bankr. S.D. Ala. May 10, 2002) (ordering extensive relief including $2,000,000 in punitive damages against lender in nationwide undisclosed-fee class); *Bank United*, 273 B.R. at 249 (finding subject matter jurisdiction over a nationwide class of debtors alleging creditors imposed fees without court approval and in violation of Code and Rules); *Powe,* 2003 Bankr. LEXIS 1986, at *5-6 (finding nationwide jurisdiction over class action alleging non-disclosure of attorneys' fees in bankruptcy); *Sheffield*, 281 B.R. at 30 (certifying national class alleging creditor failed to disclose post-petition pre-confirmation fees on proof of claim).

GMAC asserts that this Court lacks jurisdiction over Plaintiffs' claims because the claims are a "collateral attack" on the orders of courts in which the absent class members' claims are proceeding. Second MTD, p. 12. However, the class members have, by definition, been discharged, so they do not have cases pending before another court. Moreover, this Court would not be "attacking" other courts' orders, but rather enforcing core rights of debtors provided by the Code. More importantly, a "collateral attack" argument is not a jurisdictional argument. *Noletto*, 244 B.R. at 856-57. It is an argument that must be addressed at the class certification stage and thus is premature now. *See Bank United*, 273 B.R. at 249 n.20; *Noletto*, 244 B.R. at 856-57.

3.      GMAC's remaining arguments for "lack of subject matter jurisdiction" are premature.

GMAC asserts that this Court lacks jurisdiction over Plaintiffs' claims because the claims are a "collateral attack" on the orders of courts in which the absent class members' claims are proceeding.  Second MTD, pp.  12.  However, the class members have, by definition, been discharged, so they do not have cases pending before another court.  Moreover, this Court would not be "attacking" other courts' orders, but rather enforcing core rights of debtors provided by the Code.  More importantly, a "collateral attack" argument is not a jurisdictional argument.  *Noletto*, 244 B.R. at 856-57.  It is an argument that must be addressed at the class certification stage and thus is premature now. *See Bank United*, 273 B.R. at 249 n.20; *Noletto*, 244 B.R. at 856-57.

4.      Federal Rule of Bankruptcy Procedure Rule 7023 allows class actions in bankruptcy courts.

Finally, the Court cannot overlook Bankruptcy Rule 7023, which specifically fully incorporates all of Fed. R. Civ. P. 23 into adversary proceedings, and which GMAC conveniently ignores. While it is true that the rules of procedure cannot expand subject matter jurisdiction, GMAC's position would require the Court to believe that Congress intended to categorically foreclose debtor class actions arising under the Bankruptcy Code. "When coated with Rule 7023, such an already bitter pill becomes impossible to swallow." *Bank United*, 273 B.R. at 229; *Sims*, 278 B.R. 487-88.

C.      Plaintiffs have stated claims for which relief can be granted.

GMAC argues that there is no "private right of action" for any of Plaintiffs' federal bankruptcy claims and that Plaintiffs have failed to state a claim for any of them for which relief can be granted.  With respect to the latter, the Court should be cognizant that GMAC mischaracterizes

many of Plaintiffs' claims and ignores others.  Then, based on such mischaracterization of Plaintiffs'

claims, GMAC asserts that Plaintiffs have failed to state a claim or that the allegations are too

conclusory.

The Court cannot accept GMAC's fictional version of the Complaint but rather must assume

that the facts alleged by Plaintiffs are true.  Plaintiffs dispute GMAC's characterization of the facts

and allegations, and urge this Court to rule on the face of the actual amended complaint, which

sufficiently pleads facts to support every claim made by Plaintiffs in this suit.[4]

1.    **The totality of GMAC's actions deny Plaintiffs the "fresh start" to which they are entitled and the Court can provide relief to Plaintiffs for GMAC's actions.**

Plaintiffs allege that lenders are using their accounting and fee-collection practices to abuse

the Code and are denying debtors their federally-protected rights under the Bankruptcy Code –

mainly their promised fresh start with respect to having their mortgages brought current through the

bankruptcy.   The gravamen of Plaintiffs' complaint is that they complied with everything the

Bankruptcy Code required, paid the lenders all amounts the Code and the Court required, but that,

by their actions, the lenders are attempting wrongfully to foreclose and are thus denying Plaintiffs

the fresh start they are entitled to under the Bankruptcy Code.  Plaintiffs claim that the lenders'

actions violate both the letter and spirit of the Bankruptcy Code, and seek redress, including

damages, attorneys' fees, sanctions and declaratory and injunctive relief.

One of the *primary* purposes of Chapter 13 is to allow the debtor to cure defaults on his

mortgage payments and emerge from bankruptcy with all defaults nullified.   *See, e.g. Grubbs v.*

*Houston First American Savings Association*, 730 F.2d 236 (5th Cir.  1984) (*following In re Taddeo*,

685 F.2d (2d Cir.  1982).  The ability to cure a mortgage is central to the "fresh start" promised the

---

[4]A summary of the facts as alleged by Plaintiffs is attached as Appendix 1 to the Original Complaint.

**PLAINTIFFS' RESPONSE TO GMAC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - Page 19**

Chapter 13 debtor and one of core rights granted to a Chapter 13 debtor. *See Grubbs*, 730 F.2d at 238. Mortgage lenders have an obligation to acknowledge this basic federal right granted to Chapter 13 debtors by the Bankruptcy Code. *In re Rathe*, 114 B.R. 253 (Bankr. S.D. Idaho 1990).

However, now lenders, including GMAC, argue, essentially, that they have no obligations under the Bankruptcy Code and the bankruptcy courts have no jurisdiction over them whatsoever. They argue that they can ignore the requirements that the Code imposes on them to achieve the Code's purposes of allowing debtors to cure defaults, bring their mortgages current and save their homes through bankruptcy.

In its motion to dismiss, GMAC attempts to carve up Code provisions as though they are unique, separate sections that are wholly unrelated to each other. By doing so, GMAC argues that there is either "no private cause of action" for each such section, or that Plaintiffs have not properly pled the "elements" of each such Code provision or of the claims they make. However, both the Supreme Court and the Fifth Circuit require that the bankruptcy court consider bankruptcy provisions as they relate to each other and with a view to the goals of the Bankruptcy Code as a whole. *Marrama v. Citizens Bank of Mass.*, 127 S. Ct. 1105 (2007) (upholding a pragmatic remedy fashioned under section 105(a) to achieve a result that the Code clearly required, despite the apparently inconsistent approach of another Code section that was unclear or ambiguous); *Grubbs*, 730 F.2d at 240 (court must read Code provisions with reference to legislative history, context and purposes of Code); *IRS v. Luongo (In re Luongo)*, 259 F.3d 323 (5th Cir. 2001). The dissected analysis that GMAC urges is not compatible with the Supreme Court's and the Fifth Circuit's mandates, especially when Plaintiffs claim an overall pattern of abuse that violates the core purposes

of the Code.  It also ignores that Plaintiffs are seeking relief for such abuse pursuant to the Court's substantial powers under § 105.

In any event, it is far too early in the proceedings for the Court to dismiss the fundamental claims made by the Plaintiffs in this case.  GMAC seeks to have the Court dismiss Plaintiffs' claims at the very beginning of the case, before even GMAC itself can explain why it demanded thousands and thousands of dollars from the Canos both during and after their bankruptcy, and of what those thousands of dollars are comprised.  It seeks dismissal of Plaintiffs' claims even though the Canos and the Trustee paid GMAC all the deficiency and ongoing mortgage payments that the Canos were required to pay during their bankruptcy under their plan.  Indeed, GMAC seeks dismissal even though the Bankruptcy Court, after completion of the Canos' plan, specifically *ordered* GMAC to adjust its books and records to treat the Canos' mortgage as current.  *See Perez*, 373 B.R. 468 (S.D. Tex.  2007) (explaining that payment of the monthly mortgage payment by the Chapter 13 trustee should stop abusive demands by lenders after plan completion and that the debtor will know he is current on his mortgage at the end of the plan.).

Plaintiffs seek redress for federal rights provided by the Bankruptcy Code and as acknowledged by the Supreme Court and the Fifth Circuit. In addition, Plaintiffs have pled their grievances with enough specificity to survive dismissal.  Moreover, the arguments now made by GMAC have already been rejected by numerous courts, including this Court, because, in essence, GMAC's arguments boil down to an assertion that it can unilaterally deny all chapter 13 debtors the ability to save their homes through bankruptcy and obtain the fresh start which the Bankruptcy Code promises.

2.      There are express federal "causes of action" for violations of § 524 and rights
        provided by the Bankruptcy Code that the Court can enforce through § 105(a).

GMAC argues that there is no private right of action to enforce § 524, and that the Court

cannot otherwise enforce § 524 through the use of § 105.  As a result, GMAC argues, there are no

private causes of action for any of the other Code provisions on which Plaintiffs sue, and that the

Court cannot use § 105 to enforce those provisions either.   In support of its position, GMAC cites

a single, highly criticized decision from the Ninth Circuit,[5]  while completely ignoring controlling

Fifth Circuit authority.[6]

As previously noted, the Fifth Circuit has expressly recognized the existence of a federal

cause of action for violations of the discharge injunction that the Court can enforce through § 105(a).

*Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgt. Corp. (In re Nat'l Gypsum)*, 118

F.3d 1056, 1064 (5th Cir. 1997).   In *In re Nat'l Gypsum*, 118 F.3d at 1056, the Fifth Circuit

specifically rejected the argument that "any affirmative right conferred by 11 U.S.C. § 524(a) does

not confer an independent cause of action," and held that such a proceeding "is a federal cause of

action, asserting a statutory right under the Bankruptcy Code." *Id.* at 1062-64 (emphasis added).

"The discharge injunction granted by § 524(a) "the court explained, "is a substantive right conferred

by the Bankruptcy Code, often enforced by a motion for contempt . . . but also enforceable through

a declaratory judgment action." *Id.*  As a result, district and bankruptcy courts have consistently

---

[5]*Walls v. GMAC Bank, N.A.*, 276 F.3d 502 (9th Cir.  2002).

[6]Interestingly, GMAC brings up the Sears § 524 litigation.  In those cases, Sears refused to comply with a
bankruptcy court's order to correct deficiencies in its reaffirmation agreements.  *In re Iappini*, 192 B.R. 8 (Bankr. D.
Mass. 1996).  Sears also threatened the debtors with repossession if they did not sign the reaffirmation form.  After
persuading the debtors to sign the agreements, Sears purposely did not file them with the court but continued to enforce
them against the discharged debtors.  *In re Lantanowich*, 207 B.R. 326, 330-332 (Bankr. D. Mass.  1997).  While the
stakes in the Sears cases were high, they pale in comparison to the amounts at issue here where class members have paid
thousands of dollars and face potential loss of their homes through wrongful foreclosure.

**PLAINTIFFS' RESPONSE TO GMAC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - Page 22**

held that § 105(a) of the Code empowers courts to award damages to debtors, including disgorgement, sanctions and attorney's fees for violations of the discharge injunction in order to carry out provisions of the Bankruptcy Code.  *See Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000)(bankruptcy court may invoke § 105 to enforce the discharge injunction and to order damages for the debtor).  *Terrebonne Fuel & Lube*, 108 F.3d at 609.

Moreover, if, as GMAC now contends, federal courts have "resoundingly" decided that debtors have no affirmative causes of action under § 524, it is hard to explain the results in *Conley v. Sears, Roebuck & Co.*, No. 97-11149 (D. Mass. 1998); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 185-86 (D. Mass. 1998); *Brioso v. Sears, Roebuck & Co.*, Adv. Proc. No. 97-1222 (Bankr. D. Mass. 1998); and *In re Coggin*, 155 B.R. 934 (Bankr. E.D. N. C. 1993) in which federal district judges approved national settlements in favor of debtors subjected to illegal reaffirmation agreements.  In fact, in *Bessette*, the First Circuit expressly noted that "bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have engaged in conduct that violates § 524."  *Id.* at 445.[7]

### 3.    The Court can enforce Section 506 and Bankruptcy Rule 2016(b) through Section 105(a).

GMAC also argues that there is no "private right of action" under Section 506 and Rule 2016, and that this Court cannot otherwise provide relief to Plaintiffs through Section 105(a) for GMAC's violation of those provisions.  Those arguments fail for the same reasons that are stated above and that have already been rejected by the courts in *Padilla, Sanchez* and *Harris*.  In *Harris*,

---

[7]In light of this precedent, the Court can give short shrift to GMAC's additional lengthy arguments that the language of 362(k) indicates that Congress intended that debtors have no protection for the numerous other rights provided by the Code.  Second MTD, p. 15, 18.

**PLAINTIFFS' RESPONSE TO GMAC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - Page 23**

2008 Bankr. LEXIS 1072, the court noted that the Bankruptcy Court for the Southern District of Texas had thoroughly addressed and rejected this "no private cause of action" argument in *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289, 309-312 (Bankr. S.D. Tex. 2007).  *Id.* at *12.  Rejecting it once again, the *Harris* court expressly held that its equitable powers under § 105(a) extend to the enforcement of § 506(b) and Rule 2016.  *Id.*

Plaintiffs allege that GMAC charged debtors' accounts for bankruptcy fees and attorneys' fees post-petition but did not seek approval for such fees and charges from this Court under either § 506 or Bankruptcy Rule 2016.  Plaintiffs allege that thereafter GMAC demanded payment of such charges and attempted to foreclose on their homes because such fees and charges were not paid. This Court should dispose of GMAC's tired argument quickly.

> **a.  Plaintiffs have stated a claim for relief under Section 506 and Rule 2016(b) for GMAC's improper charging of fees and expenses post-petition but prior to confirmation.**

This Court specifically held that after the Chapter 13 petition has been filed and prior to confirmation of a plan, § 506(b) and Rule 2016(b) govern and limit a creditor's right to fees and expenses.  *Padilla,* 379 B.R. at 653-54.  GMAC "cannot collect" post-petition reimbursable expenses under its notes and deeds of trust without restraint.  *Id.*  "Rule 2016(a)'s plain language and case-law require creditors to file a Rule 2016 application before seeking compensation for Reimbursable Expenses incurred post petition but prior to a plan's confirmation." *Id.* at 654-55, *see also Jones v. Wells Fargo Home Mortgage*, 366 B.R. 584 (Bankr. E.D. La. 2007).  The Court can order disgorgement of such pre-confirmation expenses under § 105(a) if such expenses were sought or collected in violation of Section 506(b), Rule 2016(a) and the confirmed plan.  *Id.* at 667-68.

Plaintiffs have alleged GMAC charged Plaintiffs post-petition for fees and expenses for which it did not seek court approval. *See, e.g.,* Complaint  78, 87, Counts 3 and 4.

Plaintiffs do not know at this time and without discovery whether the post-petition fees and expenses imposed by GMAC were incurred prior to the Plaintiffs' plan confirmation. Indeed, it is precisely because GMAC failed to obtain any court approval for such fees, and thus inform Plaintiffs of those fees and expenses, that Plaintiffs sue. If GMAC incurred and imposed fees pre-confirmation and did not seek approval under Section 506(b) and Rule 2016(b), it violated those sections. Because GMAC subsequently recorded such fees as a receivable and attempted collection of such fees, this Court can order disgorgement pursuant to 11 U.S.C. §105(a). *Padilla*, 379 B.R. at 667-668, n. 12.

> **b.  Plaintiffs have stated a claim for relief under Bankruptcy Rule 2016(b) for GMAC's improper charging and collection of fees and expenses post-confirmation.**

This Court has ruled that collecting unauthorized Reimbursable Expenses post-confirmation violates both Rule 2016(a) and the terms of a debtor's confirmed plan. *Padilla,* 379 B.R. at 657-58, 661. In addition, as with pre-confirmation undisclosed and unapproved fees, if GMAC wrongly diverted plan payments to reimburse such expenses, that act violated the Plaintiffs' confirmed plans and this Court can provide relief. *See id.* at 665, 667 - 69. A lender's failure to comply with Rule 2016(a) entitles a debtor to relief against the lender, including recovery of costs and fees. *Id.* at 650.

Plaintiffs will not burden the Court by extensively briefing this issue, as GMAC's arguments have been rejected by many courts, including, specifically, this Court.[8]  Indeed, in *Padilla*, the

---

[8]*See, e.g., Padilla*, 379 B.R. at 661 ("Debtors cannot realistically obtain a 'fresh start' if mortgage lenders can
(continued...)

lender made exactly the same argument as GMAC makes here.  This Court rejected that argument and held that ordering disgorgement of fees sought or collected in violation of § 506(b) or 2016(a) is within the Court's §105 authority.  *Padilla,* 379 B.R. at 667; *Terrebonne Fuel & Lube*, 108 F.3d at 612-13.  "Either a lender's failure to comply with Rule 2016(a) or its imposition of Reimbursable Expenses beyond those allowed by non-bankruptcy law entitles a debtor to relief against the lender, including recovery of costs and fees." *Id.* at 650.

### c.  Enforcement of Rule 2016 and § 506(b) is necessary to ensure that the debtor can formulate and complete a plan and the Court can effectively administer the estate for the debtor and all creditors.

The holdings of such cases are sound because illegitimate fees and expenses charged by a lender can have a profound effect on the estate, the debtor and the formulation, implementation and success of the debtor's plan.  *See Jones*, 366 B.R. 584 (Bankr. E.D. La. 2007) (lengthy discussion of how secured lender's undisclosed fees and other bankruptcy abuses wreaks havoc on the debtor and estate).  Section 1322(b)(5) is a provision of the Bankruptcy Code which gives the debtor options for plan formulation, not the creditor.  *Slick*, 2002 Bankr.  LEXIS 772 at *16-17.  If the

---

[8](...continued)

charge a debtor's account without disclosure"); *see also Sanchez v.  Ameriquest Mortgage Co.  (In re Sanchez)*, 372 B.R. 289, 303-05 (Bankr. S.D. Tex. 2007) (holding that the entity seeking reimbursement for expenses from the estate must comply with Section 506(b) and Rule 2016); *In re Parsley*, 2008 Bankr.  LEXIS 593, at *74-77 (Bankr. S.D. Tex. March 5, 2008) (same); *In re Hence*, 2007 Bankr.  LEXIS 4156, at *28 (Bankr.  S.D. Tex.  2007) (failure to file an application for post-petition fees under Rule 2016(a) means that, as a matter of law, any such post-petition fees are *per se* unreasonable); *In re Jones*, 366 B.R. 584 (Bankr.  E.D. La.  2007) (same); *In re Jones*, 2007 Bankr.  LEXIS 2984 (Bankr.  E.D. La.  Aug.  29, 2007); *In re Tate*, 253 B.R. 653 (Bankr.  W.D. N.C. 2000 (granting summary judgment to debtor class because undisclosed fees are *per se* unreasonable); *In re Sheffield*, 281 B.R. 24, 33 (Bankr.  S.D. Ala.  2000 ("Fees which are not disclosed at all, fees which are not properly claimed with specificity, or are not included in the arrearage claim to be paid through the plan if the plan so provides, are *per se* unreasonable because they are improperly charged); *In re Harris*, 280 B.R. 876, 885 (Bankr. S.D. Ala. 2001) ("A fee which is charged, but not fully disclosed to the debtor is not owed."); *Craig-Likely v.  Wells Fargo Home Mortgage (In re Craig-Likely)*, 2007 U.S. Dist.  LEXIS 29042 (E.D. Mich.  March 2, 2007) (Wells Fargo waived right to escrow deficiency because it failed to notify anyone of post-petition escrow deficiency – Wells Fargo violated federal law and local rules for three years); *In re Padgett*, 268 B.R. 309, 312 (Bankr.  S.D. Fla.  2001) (mortgage company waived right to recover advances by failing to notify debtors of escrow deficiencies); *In re Slick*, 2002 Bankr.  LEXIS 772 (Bankr. S.D. Ala.  May 10, 2002) (awarding $2,000,000 for failure to disclose fees even though numerous courts previously made the duty to disclose clear.)

**PLAINTIFFS' RESPONSE TO GMAC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - Page 26**

debtor does not know all of his debts, he cannot exercise his options most effectively. *Id.* The mortgage lender "cannot decide for what the arrearage or costs the debtor may pay in his or her plan or what arrearages the debtor may not pay by picking and choosing which § 506(b) costs to disclose." *Id.* at *16-17.

Also, the court must monitor a creditor's right to recover post-petition costs to ensure an equitable distribution among creditors. *Padilla,* 379 B.R. at 654. Only reasonable fees can be charged, and the burden is on the creditor to show entitlement fo reasonableness. *Id.* If the fees are not disclosed, no reasonableness determination can be made. *Id.* Equitable distribution cannot be realized if one creditor can deprive other creditors by depleting the estate with unjustified fee and expense claims. *Id.*

In addition, the application of trustee and debtor's monthly mortgage installments to undisclosed charges diverts payments ordered by the court under the confirmation of the debtor's plan to satisfy other debt. *Jones,* 366 B.R. at 595. Such action is a violation of the plan and directly impacts the estate and its creditors  (assessment of post-confirmation attorneys' fees and expenses directly relates to the debtors' estate. This is because any amounts charged will "correspondingly enlarge the debt of the estate, make reorganization more difficult for the debtor, and adversely impact upon the claims of the remaining creditors."). *Id.* at 595 (*citing In re Hudson Shipbuilders, Inc.,* 794 F.2d 1051, 1055 (5th Cir. 1996) (satisfaction of fees and charges was from property of the estate and directly impacted the status of debtor's plan.). *Id.; see also, Padilla*, 379 at 657. This Court has also ruled that collecting unauthorized reimbursable expenses, including diverting plan payments to reimburse such expenses, violates both Rule 2016(a) and the terms of a debtor's confirmed plan. *Padilla,* 379 B.R. at 657-58, 661, 667-68.

Rule 2016(a) applications are also necessary to ensure debtors can exercise their right to cure defaults.   The Bankruptcy Code gives debtors the right to cure post-confirmation defaults at any point after confirmation.  *Padilla*, 379 B.R. at 661; *In re Mendoza* 111 F.3d 1264 (5th Cir.  1997).  The failure to pay post-petition reimbursable expenses may create a post-petition default.  *Id.*  Debtors cannot cure defaults pursuant to § 1325(b)(5) and § 1329(a) if lenders do not disclose the defaults.  *Id.*

### d.    The anti-modification provision of 1332(b) does not immunize GMAC from liability.

GMAC also argues that forcing it to disclose these fees and expenses violates the anti-modification provision of § 1322(b).  *See, e.g.*, Second MTD, p.  32-35.[9]

This claim has been rejected by almost every court to have considered it, including this Court.  *See, e.g., In re Watson*, 2008 Bankr. LEXIS 1011 (Bankr. De. April 7, 2008); *Padilla*, 379 B.R. at 655 - 662 (*Nobleman* does not hold that § 1322(b)(2) immunized all mortgage rights from the effects of the Bankruptcy Code.); *Campbell v.  Countrywide Home Loans, Inc.  (In re Campbell)*, 361 B.R. 831, 844-47 (Bankr. S.D. Tex. 2007); *Harris*, 312 B.R. at 595 (Section 1322(b)(2) is subordinate to rights of debtors to maintain and cure - bankruptcy court correct to deny lender's motion to dismiss.); *Sanchez*, 372 B.R. at 304 ("Section 1322(b)(2) gives lenders considerable discretion, but it does not give them carte blanche to charge any fees that follow the letter of the contract.").

Moreover, the Fifth Circuit has already held that the debtor's ability to cure a default, whether the default is pre-petition or post-petition, is not a modification of the lender's rights.

---

[9] Most of GMAC's other arguments boil down to the assertion that GMAC is immune from the Bankruptcy Code and Rules because of the anti-modification provision of 11 U.S.C. § 1322(b)(2).  *See, e.g.* Second MTD, p. 32-35.

*Mendoza*, 111 F.3d at 1268-69 (legislative history shows Congress intended to provide homeowners with continuing rights to cure defaults and preserve their primary asset); *Taddeo*, 685 F.2d at 26-27 (right to cure the pre-petition deficiency is not a "modification" prohibited by 1322(b)).  Thus, requiring the lender to apprise the court and the debtor of fees and charges that it imposes on the account post-petition is not a modification of the lender's rights, but rather merely a requirement that the court enforce the debtor's plan and fresh start, with its overarching right of the debtor to save his home through Chapter 13 as Congress intended.  *See Padilla*, 379 B.R. at 657-61, 665-66; *Mendoza*, 111 F.3d at 1268-69;  *Jones,* 366 B.R. at 595-96 (debtor is allowed to cure post-confirmation fees and charges so it is imperative that he be advised of them)  (citing numerous cases).

Finally, GMAC attempts to distinguish *Padilla* on the grounds that the court's ruling does not apply because the contract "here" [in Cano] provides that charges to the borrowers shall be due and payable "at the lender's option,"  and argues again that because of this clause, requiring notice and the submission of a Rule 2016 application would substantively limit GMAC's contract rights. Second MTD, p.  26-27.  In other words, GMAC argues that it can impose such fees and charges and seek payment of them "whenever it wants," including at a time after discharge when the Bankruptcy Court can no longer review them and the debtors can no longer cure them through their plans. However, the purported distinction fails because the Cano deed of trust provision here *is exactly the same* as the one in *Padilla.  See Padilla v. Wells Fargo*, Adversary No.  06-03609 (S.D. Tex.  2006), Docket No.  11, Exhibit 2, Bankr. ¶ 7; Complaint, Ex.  A.

More importantly, this argument is just another version of that made by lenders decades ago to the Fifth and Second Circuits in *Grubbs* and *Taddeo*, i.e., "that because the creditor can accelerate

the mortgage under state law, the debtor can cure only as provided by state law." *Taddeo*, 685 F.2d at 27-28; *see also Grubbs*, 730 F.2d at 241.  GMAC is arguing, essentially, it can charge whatever fees it wants under state law, and the debtors have no ability to pay them except under state law on the lenders' terms.  However, "this interpretation of *§ 1322(b)* would leave the debtor with fewer rights under the new Bankruptcy Code than under the old Bankruptcy Act of 1898." *Taddeo*, 685 F.2d at 27-28.  Such a result would be totally at odds with the "overriding rehabilitative purposes of Chapter 13." *Id.*

### 4.    Likewise, the Court can use § 105 to enforce Chapter 13 provisions, Chapter 13 plans and the orders confirming those plans.

GMAC argues Plaintiffs' complaint should be dismissed because there are no private rights of action to file a lawsuit for damages or other relief under 11 U.S.C. §§ 105, 506, 524, 1322, 1326, 1327 or 1328 of the Code.   Second MTD, p. 14.  GMAC is wrong.  As noted by Judge Briskman in addressing the exact same argument:

> Defendant's position eviscerates Chapter 13.  No plan would ever be binding on creditors and confirmation would be meaningless.  A creditor could assess any charges it wanted to against a debtor and the debtor would have no recourse for challenging charges.  The Defendant's position would also render the discharge injunction meaningless.  Section 524 does not contain a specific private right of action, but the courts have universally recognized a debtor's standing to seek damages for violations of the discharge injunction.

*Ryerson v. Chase Manhattan Mortgage Corp. (In re Ryerson)*, 2006 Bankr. LEXIS 3721, at *7 (Bankr. M.D. Fla. Nov. 20, 2006); *see also Hardy ex rel. IRS v. United States (In re Hardy)*, 97 F.3d 1384, 1389 (11th Cir. 1996).

Indeed, Plaintiffs allege GMAC engaged in precisely such behavior here, demanding incomprehensible, enormous sums that were not, in fact, due under the plan, and even instituting foreclosure because such sums were not paid.  The reasoning of the First Circuit in *Bessette*, and the

Fifth Circuit in *Terrebonne Fuel & Lube* with respect to the discharge injunction applies with equal force to the bankruptcy court's ability to redress a creditor's violations of other Code provisions, and has been extended to redress a wide range of wrongs committed by creditors in violation of bankruptcy statutes, including the Chapter 13 sections Plaintiffs allege GMAC violated here.

Contrary to GMAC's arguments, each of the Chapter 13 sections under which Plaintiffs sue is a substantive provision in the Bankruptcy Code that the Court can enforce through § 105(a). *See, e.g., In re Harris*, 297 B.R. at 69-70 (court can use § 105(a) to enforce creditor violations of § 1322(b)(5)); *Nosek v. Ameriquest Mortgage Co. (In re Nosek)*, 363 B.R. 643, 647-48 (Bankr. D. Mass. 2007) (courts relying on *Bessette* have extended § 105(a) to remedy Code violations other than § 524, including section § 1322(b)(5); court awarded $500,000 in punitive damages for lender's issuing grossly incorrect payoff statements and payment histories); *Ryerson*, 2006 Bankr. LEXIS 3721, at *7-8 (court denied Chase's summary judgment motion that asserted that debtors had stated no cause of action under §§ 1322(b)(5), 1322(a)(1), 1326(c), 1327(a) or 105. Chase's argument would "turn the Bankruptcy Code on its head").

Likewise, Plaintiffs have stated claims for relief against GMAC for its wrongful collection of amounts due on the defaulted notes that actually were being paid through the confirmed plans. *See, e.g., Padilla*, 379 B.R. at 663 (after a Chapter 13 plan is confirmed, § 1322(b)(2) of the Bankruptcy Code governs the lender's rights to collect amounts that otherwise would have been due under the note); *Jones,* 366 B.R. at 603 (Bankr. E.D. La. 2007)("creditor may not apply plan or direct payments other than as set forth in the confirmed plan. Application of payments to post-confirmation charges without court permission constitutes a collateral attack on the order of confirmation"). The confirmed plan precludes GMAC from exercising its default rights based on

any pre-petition arrearage.  *Padilla,* 379 B.R. at 663 (emphasis added); *see also In re Talbot*, 124 F.3d 1201, 1209 (10th Cir. 1997); 8 Collier on Bankruptcy,  1327.02[1][b] (15th ed. rev. 1996) ("Because creditors' rights are limited to those rights they are afforded by the plan, they may not take actions to collect debts that are inconsistent with the method of payment provided for in the plan.").

Thus, this Court can, pursuant to § 105(a), order reimbursement and/or disgorgement of monies collected in violation of a confirmed Chapter 13 plan and provide other remedial measures as a necessary action to assure that the purposes of the Bankruptcy Code are fulfilled.  *Padilla,* 379 B.R. at 667.

Finally, Plaintiffs have stated cause of action for which the Court can provide relief because GMAC, through its actions and inactions, is undermining the Bankruptcy Code's entire statutory scheme that allows debtors to cure their mortgage deficiencies, save their homes, and achieve the fresh start promised by the Code.  A principal purpose of the Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor," after completing a Chapter 13 plan.  *Marrama*, 27 S. Ct. at 1107; *Sanchez*, 372 B.R. at 29 (American bankruptcy system is often described as having two primary objectives: first, ensuring the equitable and timely repayment of creditors; and second, affording the debtors a fresh start once they emerge from bankruptcy.). The conduct of GMAC undermines these objectives.  As Judge Shannon of the District of Delaware recently noted:

> When Mortgage Lenders fail to disclose post-confirmation fees and charges to both debtors and the Court, the bankruptcy system cannot achieve the second of these twin goals.  In order for debtors to receive a fresh start, both they and the Court must be fully informed of all relevant facts, including post-confirmation fees and charges. Moreover, it is incumbent upon the Court to timely consider and rule upon post-petition fees and charges to ensure that the purposes animating the Code are achieved.  If the Court and the Chapter 13 Trustee fully administer a case through completion of a 60-month Chapter 13 plan, only to have the debtor promptly re-file on account of accrued, undisclosed fees and charges on her mortgage, it could fairly be said that we have all been on a fool's errand for five years.

*In re Watson*, 2008 Bankr. LEXIS 1011, at *26 (Bankr. D. De. April 7, 2008). Indeed, "If the [Plaintiff] has paid all of the cure payments required by their plan, [GMAC] may not deny the fresh start to which they are entitled." *Padilla,* 379 B.R. at 661.

The Supreme Court in *Marrama* recently affirmed that courts must issue orders that are necessary to prevent an "abuse of process" and assure that the purposes of the Code are fulfilled. 127 S. Ct. 1111-12; *see also Padilla*, 379 B.R. at 667 (court has inherent powers under § 105(a), which gives broad authority to take actions necessary and appropriate for administering and enforcing the Code); *see also U.S. v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986) (noting that §105(a) "authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code"). As described more fully herein, GMAC's actions are an abuse of process for which the Plaintiffs have stated claims and for which this Court can provide relief.

### 5.   Plaintiffs have stated a claim for violations of Bankruptcy Code § 362(k).

GMAC argues that Plaintiffs have failed to state a claim for violation of the automatic stay because, it alleges, Plaintiffs' "specific allegations regard attempts to collect debts that *all* took place after discharge." Second MTD, p. 29-30 (emphasis added).

GMAC's argument is based on a false characterization of Plaintiffs' complaint. Plaintiffs actually allege that throughout the bankruptcy, GMAC sent statements to the Debtors demanding the Debtors pay pre-petition deficiency amounts that actually were being paid by the Trustee through the plan. Complaint, ¶¶ 2-5, 12-15, 18, 21-29, 45 (". . .throughout the bankruptcy,. . .GMAC sent statements [to the Debtors] showing large 'past due' or 'unpaid' amounts, fees and expenses."), 26 n.1. ("the amounts demanded [of Debtors] by GMAC must have included (1) pre-petition debt. .

.") ¶ 45 ("Each such statement ... was a violation of the automatic stay. . ."). GMAC sent these demands directly to the debtors seeking that they use their earnings (property of the estate) to pay the amounts demanded. Plaintiffs have stated a claim for violation of the stay. Plaintiffs are entitled to seek recovery for GMAC's violations of the stay during their Chapter 13 bankruptcy proceedings. *Cf. Padilla*, 379 B.R. at 670, n. 14 (noting that nothing in § 349(b) deprives a debtor of a valid cause of action that arose during the bankruptcy case prior to its dismissal.).

> **6.   GMAC is violating the Code and the plan because it continues to seek prepetition deficiency amounts being cured by the plan and applies plan payments other than as directed by the plan.**

GMAC argues that requiring it to apply payments as the court and the plan direct is an impermissible modification of its rights under Section 1334(b) and it violated nothing by failing to do so. Second MTD, p. 32-35. This argument has been discussed at length previously.

Because the plan requires that the lender "de-accelerate" their mortgages and reinstate them to their original payment schedule, the lender must account appropriately for ongoing mortgage payments and pre-petition cure payments. *See, e.g., In re Rake v. Wade*, 508 U.S. 464, 469-73 (1993) (as authorized by Section 1322(b)(5), the plans essentially split each of respondent's secured claims into two separate claims – the underlying debt and the arrearages). *Cf. Grubbs v. Houston First American Savings Association,* 730 F.2d 236 (5th Cir. 1984) (*following In re Taddeo*, 685 F.2d 24, 26 (2d Cir. 1982) (the consequences of default are "nullified"). The failure of a lender to properly account for cure and ongoing payments (in other words, the failure of a lender to de-accelerate the loan and nullify the acceleration) robs the debtor of his federally-protected right to cure his mortgage under the Bankruptcy Code. *See In re Wines*, 239 B.R. 703 (Bankr. D. N.J. 1999); *Nosek*, 363 B.R. at 645 ("[The lender] cannot use its accounting procedures to contravene the terms

of a confirmed Chapter 13 plan and the Bankruptcy Code.") (quoting *In re Rathe*, 114 B.R. 253 (Bankr. S.D. Idaho 1990); *Jones*, 366 B.R. at 590 (describing numerous Code violations by lender by reason of lender's failure to split the claim and apply payments by the debtor and the trustee properly).

Plaintiffs allege that GMAC violated the stay and the plan during the bankruptcy and attempted improperly to foreclose after discharge even though Plaintiffs were current by reason of their plan.  To redress such actions, this Court can provide injunctive relief, sanctions and attorneys' fees, as a necessary action to assure that the purposes of the Bankruptcy Code are fulfilled.  *See Padilla*, 379 B.R. at 667;  *Nosek*, 363 B.R. at 647-48; *Jones*, 366 B.R. 584.

Finally, Plaintiffs note that numerous courts have held that the actions Plaintiffs alleged in their complaint violate the automatic stay and the plan.  *See, e.g., Jones*, 366 B.R. 584, 601 (application of payment to hidden, unapproved fees rather than to pre-petition arrearage "clearly" a violation of the stay); *Sanchez*, 372 B.R. 289, 310 - 17; *McCormack v. Chase*, 203 B.R. 521, 523 - 25 (Bankr. D. N.H. 1996) (adding fees for collecting "down the road" was in conscious disregard for the stay and court orders and warrants punitive damages).  Given that discovery is necessary to determine what GMAC did with the funds sent to it by the Plaintiffs and the Chapter 13 Trustee, it is premature to dismiss Plaintiffs' claims for a stay violation.  *See, e.g., Schramm*, 2006 Bankr. LEXIS at *20-21 (lender's argument that the stay had terminated "is a fact-based argument which does not provide a basis for dismissal under Rule 12(b)(6)").

**7.      Plaintiffs have stated claims for violations of his plan and the orders confirming their plan (breach of contract) for which relief can be granted.**

GMAC asserts that Plaintiffs have failed to state a claim for breach of contract because "the confirmation of Plaintiffs' Chapter 13 bankruptcy plan" did not constitute a new contract.  Second MTD, p. 32.  GMAC's position is simply wrong.  "A confirmed plan constitutes a new contract between the debtor and creditors."  *In re Stratford of Tex., Inc.*, 635 F.2d 365, 368 (5th Cir. 1981); *see also In re Dow Corning Corp.*, 456 F.3d 668, 676 (6th Cir. 2006)("the plan is effectively a new contract between the debtor and its creditors"); *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993).  A plan's contents will be shaped by claims that arose prior to a debtor's bankruptcy petition. "However, after plan confirmation, a creditor's rights are defined by the confirmed plan."  *Padilla*, 379 B.R. at 663; *In re Talbot*, 124 F.3d 1201, 1209 (10th Cir. 1997); 8 Collier on Bankruptcy, at § 1327.02[1][b].

**8.      Plaintiffs have stated a claim for violation of the discharge injunction.**

GMAC next argues that because its "mortgage debt" was excepted from discharge under 11 U.S.C. §§ 1328(a) and 1322(b)(5), none of the amounts it now seeks have been discharged.  Second MTD, p. 24.   However, GMAC *admits* that "the pre-petition arrearage is discharged under sections 524 and 1328,"  Second MTD, p. 25, and  Plaintiffs *claim* that GMAC sought, post-discharge, to collect pre-petition arrearage amounts that were cured during the plan, Complaint, ¶¶ 1-3, 12, 13, 15, 21, and n.1, 54-56.  Thus, by GMAC's own admission, Plaintiffs have stated a claim violation of sections 524 and 1328.[10]

_____

[10]GMAC cites a case, not from the Fifth Circuit, to support its argument that this Court can do nothing for the debtors in this case.  *Guetling v. Household Financial Services, Inc. (In re Guetling)*, 312 B.R. 699 (M.D. Fla. 2004). The plaintiffs in *Guetling* brought their case in district court.  In that case, the lender never attempted to collect any amounts from the debtors, and more importantly, *the plaintiffs did not file a response to Household's motion to dismiss*,

(continued...)

GMAC next argues that its claims for post-petition fees and expenses were not "provided for" in the plans and thus not discharged. Second MTD, p. 24-25. Such argument is ludicrous under the facts of this case and the law. *See Rake v. Wade*, 508 U.S. at 473 ("Petitioners' plans clearly 'provided for' respondents' home mortgage claims by establishing repayment schedules for the satisfaction of the arrearages portion of those claims."); *In re Perez*, 339 B.R. 385, 390, n. 4 ("When the plan is confirmed, all payments that are referenced in the plan, regardless of whether they are made by the trustee or directly by the debtor, are payments made "under the plan."). GMAC is "bound by the confirmed Chapter 13 plans in these cases." *Padilla*, 379 B.R. at 666.

GMAC relies on *In re Guevara*, 258 B.R. 59 (Bankr. S.D. Fla. 2001), Second MTD, p. 26, 37, which reached its harsh decision without citing *any* case law to support its holding. The only two cases that have cited *Guevara* reject the arguments GMAC makes here. *See In re Dominique*, 368 B.R. 913 (Bankr. S.D. Fla. 2007); *In re Lowthorp*, 325 B.R. 470 (Bank. M.D. Fla. 2005). GMAC also cites *In re Tomasvic*, 275 B.R. 86 (Bankr. M.D. Fla. 2001), but *not one other* court has cited that case for the proposition cited by GMAC. Even that court agreed that a request for attorney's fees and post-petition costs is procedurally made by motion pursuant to Section 506(b) of the Bankruptcy Code. *Id.* at 95, n.13.

Also, numerous courts have held that, post-discharge, undisclosed fees and amounts claimed by mortgage lenders in excess of that provided in the plan were discharged. *Slick,* 2002 Bankr. LEXIS 782 at *16-17 ("If the fee is not disclosed, it is discharged."); *see, e.g., Miller v. Countywide*

---

[10](...continued)

so the only cases available to the court to consider were the ones cited by Household! *Guetling*, 312 B.R. at 700, 705. The cases cited by the district court were old and discredited. With due respect to the district court for the Middle District of Florida, this abdication of jurisdictional imperative is not the law in the Fifth Circuit or this Court. *See, e.g., Terrebonne Fuel and Lube*, 108 F.3d 609; *In re Nat'l Gypsum*, 118 F.3d 1056; *Padilla*, 379 B.R. 643.

*Home Loans (In re Miller)*, 2007 Bankr. LEXIS 31 (W.D. Pa. Jan. 9, 2007) (court granted motion to enforce discharge in factually indistinguishable case); *Schramm v. TMS Mortgage, Inc. (In re Schramm)*, 2006 Bankr. LEXIS 4470 (Bankr. N.D. Ohio July 6, 2006) (court rejected lender's motion to dismiss where lender argued that long term debt is not discharged – "Complaint clearly states a claim for violation of the discharge."); *McDonald v. Bank Fin. (In re McDonald)*, 336 B.R. 380 (Bankr. N.D. Ill. 2006) (discharge order was a judgment adjudicating debtor's cure of the pre-bankruptcy arrearage - bank would be held in contempt under Section 524); *In re Chess*, 268 B.R. 150, 158-159 (Bankr. W.D. Tenn. 2001) (after entry of discharge and order deeming mortgage account current, Fairbanks "'laid in wait' for the discharge order to be entered so that it could then proceed to foreclose on the property for the arrearage which had knowingly been accruing for seven months."); *In re Conway*, 126 B.R. 28, 29 (Bankr. D. De. 1991) (after discharge of successful plan, lender filed a state-court action for increases in taxes and insurance that it admitted accrued post-petition and prior to discharge - such debt "was clearly discharged."); *Jones*, 366 B.R. 584 (effect of plan and discharge is that all charges, fees, negative escrows should be zero); *In re Rathe*, 114 B.R. 253 (lender enjoined from collecting any costs incurred prior to termination of debtor's plan).

**D.  Plaintiffs have stated claims for which declaratory relief, injunctive relief and attorneys' fees can be awarded.**

Finally, GMAC argues that Plaintiffs' claims for declaratory relief, injunctive relief and attorneys' fees should be dismissed.  Second MTD, p. 37-39.  This position is based primarily on the contention that all of Plaintiffs' other claims must be dismissed.  *Id.* at 38.  As shown herein, Plaintiffs' claims cannot be dismissed.  Moreover, the Court's power to provide such relief as well as attorneys' fees under §105 is unquestioned.  *See, e.g., Bessette*, 230 F. 3d at 445 (noting that bankruptcy courts "across the country" have used statutory contempt power of § 105 to order

monetary relief, including attorneys' fees for violations of the discharge injunction); *Terrebonne Fuel & Lube*, 108 F.3d at 612-13 (same); *In re Nat'l Gypsum*, 118 F.3d at 1063 (discharge injunction enforceable by contempt and declaratory judgment action); *Schuessler,* 2008 Bankr. LEXIS 1000, at *91 (awarding debtors' attorneys' fees for defending false motion for relief from stay where lender's accounting system was an abuse of process); *Campbell*, 361 B.R. at 852; *Tate*, 253 B.R. at 668 (plaintiff entitled to recover attorneys' fees for defendant's violation of Section 506(b) and Rule 2016(a)); *Barry v. Sommers (In re Cochener),* 360 B.R. 542 (Bankr S.D. Text. 2007), *aff'd Cochener v. Barry*, 297 Fed. Appx. 382 (5th Cir. 2008) (unpublished opinion); *In re Slick*, 2002 Bankr. LEXIS 772 (Bankr. S.D. Ala. May 10, 2002) (using § 105 to order disgorgement, actual damages, punitive damages, attorneys' fees, injunctive relief and $2,000,000 in sanctions for failure to disclose fees); *In re Jones*, 366 B.R. 584 (Bankr. E.D. La. 2007); *In re Jones*, 2007 Bankr. LEXIS 2984 (Bankr. E.D. La. Aug. 29, 2007), *aff'd in part, rev'd in part and remanded*; *Wells Fargo Bank, N.A. v. Jones*, Civil Action No. 07-3599, Docket No. 76 (E.D. La. July 1, 2008) (awarded attorneys' fees as part of sanction for Wells Fargo's improper accounting, including addition of hidden and improper fees to the debtor's account); *Select Portfolio Services, Inc. v. Galindo (In re Galindo)*, 2006 U.S. Dist. LEXIS 53077 (S.D. Tex. July 31, 2006) (district court upheld civil contempt sanctions, including award of attorneys' fees, where mortgage lender failed to properly account for debtor's payments); *Workman v. GMAC (In re Workman)*, (Bankr. S.C. 2007) LEXIS 3887 (November 21, 2007) (case factually indistinguishable from this one; court used 105 order to pay the aggrieved party damages and attorneys' fees and punitive damages.)

## V.

## CONCLUSION & PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Robert and Anna Cano respectfully prays that

Defendant's Motion to Dismiss Plaintiffs Amended Complaint be, in all respects, DENIED.

Dated: May 14, 2009.

Respectfully submitted,

THE KELLETT LAW FIRM,
A PROFESSIONAL CORPORATION

By:  */s/ Karen L. Kellett*
　　　Karen L. Kellett
　　　State Bar No. 11199520

Founders Square
900 Jackson Street, Suite 120
Dallas, TX 75202
(214) 292-3660 - Telephone
(214) 744-3661 - Telecopy

Ellen C. Stone
State Bar No. 19305000
THE STONE LAW FIRM, P.C.
62 E. Price Road
Brownsville, TX 78520
(956) 546-9398 - Telephone
(956) 542-1478 - Telecopy

Antonio Martinez, Jr.
State Bar No. 24007607
THE STONE LAW FIRM, P.C.
4900 North Tenth Street
Suite E-2
McAllen, TX 78504
(956) 630-2822 - Telephone
(956) 631-0742 - Telecopy

Gary Klein (*pro hac vice* pending)
Mass. Bar No. 560769
RODDY, KLEIN & RYAN
727 Atlantic Avenue
Boston, MA  02111-3810
Telephone:  617-357-5500
Telecopy:  617-357-5030

ATTORNEYS FOR PLAINTIFFS
ROBERT AND ANNA CANO

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on May 14, 2009, she caused a true and correct copy of the foregoing to be sent by electronic mail, upon the parties listed below.

**<u>U.S. TRUSTEE:</u>**

Charles Sterbach                              (charles.r.sterbach@usdoj.gov)
Barbara Jue                                   (barbara.c.jue@usdoj.gov)
606 N. Carancahua, Ste. 1107
Corpus Christi, TX  77476

**<u>ATTORNEYS FOR GMAC
MORTGAGE CORP.:</u>**

Thomas A. Connop                              (tconnop@lockelord.com)
Locke Lord Bissell & Liddell
2200 Ross Ave., Suite 2200
Dallas, TX  75201

Elizabeth Carol Freeman                       (efreeman@lockelord.com)
W. Steven Bryant                              (sbryant@lockelord.com)
Locke Lord Bissell & Liddell
600 Travis Street, Suite 3500
Houston, TX  77002


                                   */s/Karen L.  Kellett*                    
                                   Karen L. Kellett

**PLAINTIFFS' RESPONSE TO GMAC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - Page 42**