

ENTERED
08/13/2009

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ROBERT CANO, *et al*, | § | **Case No. 02-70359** |
| Debtor(s). | § | |
| | § | **Chapter 13** |
| | § | |
| ROBERT CANO, *et al*, | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **Adversary No. 08-07019** |
| | § | |
| GMAC MORTGAGE CORP, | § | |
| Defendant(s). | § | **Judge Isgur** |

### MEMORANDUM OPINION

#### Background

Plaintiffs are current and former chapter 13 debtors who executed mortgage[1] contracts with GMAC. Plaintiffs allege that GMAC improperly charged and collected fees and costs during their pending chapter 13 plans and failed to disclose the activities to the bankruptcy court. Plaintiffs also allege that GMAC attempted to collect some non-disclosed, accumulated fees and costs after Plaintiffs received their chapter 13 discharges. Plaintiffs seek relief from GMAC's alleged conduct under a host of theories.

The Court dismisses the majority of Plaintiffs' claims. Most claims are based on Bankruptcy Code provisions that define the contents and mechanics of a chapter 13 plan but do not grant debtors substantive rights. Nothing within those provisions allows the Court to create

---

[1] Both deeds of trust and mortgages grant a lender a security interest in a debtor's home. However, the debtor retains title to the home under a mortgage. A neutral third party (a trustee) holds title to the home under a deed of trust. Texas is a "Deed of Trust" state. Nevertheless, common parlance utilizes the terms interchangeably. For the purposes of this opinion, the differences are irrelevant. For convenience, the Court refers to deeds of trust and mortgages interchangeably.

private causes of action out of provisions that define contents and mechanics. The Court cannot graft into the Code rights and remedies that Congress chose not to create.

However, the Court also ahs the duty and authority to enforce court orders and substantive rights provided by the Code. Accordingly, the Court declines to dismiss Plaintiffs' claims for violation of court orders confirming Plaintiffs' chapter 13 plans, and violation of Federal Rule of Bankruptcy Procedure 2016.[2]

## 1. Summary of Allegations

Plaintiffs are former chapter 13 debtors who have mortgage contracts with GMAC Mortgage Corporation, L.L.C. Plaintiffs allege that they diligently completed their chapter 13 plans and received a discharge. Plaintiffs' plans provided for the cure of all arrears on their home mortgages. Accordingly, when Plaintiffs completed their final plan payment, they should have faced a "new opportunity in life with a clear field for future effort," unfettered by arrearages on their home mortgages. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45, 54 S. Ct. 695, 78 L. Ed. 1230 (1934).

Despite Plaintiffs' completion of their chapter 13 plans, Plaintiffs allege that they entered their first day of post-discharge life in default. Essentially, Plaintiffs allege that GMAC managed their mortgage accounts in a manner that violated Plaintiffs' chapter 13 plans and deprived them of the fresh start purpose of chapter 13. Plaintiffs allege that GMAC allocated chapter 13 plan payments among arrearages, pre-petition debts, and current principal and interest in contravention of Plaintiffs' plans. Plaintiffs also allege that defendant GMAC charged or accumulated fees and costs that were not authorized by the mortgage contracts or the orders confirming their chapter 13 plans. Plaintiffs allege that GMAC did not disclose to the Court the

---

[2] For the reasons set forth in this Memorandum Opinion, the Court refrains from considering Plaintiffs' claims for breach of contract, contempt, and abuse of process at this juncture.

fees and costs during their chapter 13 bankruptcy cases. Plaintiffs allege that only now, after Plaintiffs received their discharge and the Bankruptcy Court's eyes have turned to other cases, GMAC is seeking to collect undisclosed and accrued fees and costs. Plaintiffs allege that GMAC has foreclosed on homes based on unwarranted and undisclosed fees and costs in the past and is threatening to foreclose on Plaintiffs' homes if they do not pay the thousands of dollars in accumulated fees and costs.

## 2. Specific Allegations

The Canos filed a chapter 13 bankruptcy petition in August of 2002. The Bankruptcy Court issued an order confirming the Canos' chapter 13 plan on February 20, 2003. The plan and a subsequent modification to the plan provided for current monthly principal and interest payments, pre and post-petition arrearages, escrow shortages, and legal costs incurred by GMAC.

As of June, 2005, the Canos allege that they were current on all mortgage obligations, including property taxes. Nevertheless, the Canos allege that GMAC attempted to collect unauthorized fees and expenses in a manner that violated various provisions of the Bankruptcy Code, Bankruptcy Rules, and the court orders confirming their plan. In July, 2005, GMAC filed an amended proof of claim seeking an amount that exceeded the Canos' original principal balance and that allegedly contained unsupported and unauthorized amounts. During 2006 through 2008, the Canos allege that GMAC sent them statements showing "past due" or "unpaid" amounts that were unsupported and unauthorized.

On January 11, 2008, the trustee for the Canos' bankruptcy case filed a motion for an order declaring the Canos' mortgage current. The motion stated that the debtor had completed all plan payments and all amounts claimed in GMAC's proofs of claim were paid. GMAC did

not object to the motion. On February 4, 2008, the Bankruptcy Court issued an order finding that the Canos had paid all amounts claimed in GMAC's proofs of claim and that the Canos were current on their mortgage obligations. The order also required the Canos to resume making monthly payments directly to GMAC.

On February 21, 2008, the trustee filed a report and notice of bar date that showed all the plan payments made to GMAC and required GMAC to file a supplemental proof of claim to recover any additional amounts authorized by their mortgage contract. The report stated that any claim not filed within 60 days would be barred. The report also stated that GMAC must provide the trustee, the debtor, and debtor's counsel with written notice of any changes in the debtor's monthly payment obligations. GMAC did not file a supplemental claim or object to the notice.

The Bankruptcy Court granted the Canos a chapter 13 discharge on February 26, 2008. Despite the discharge, the court order finding the Canos current, and the trustee's final report, GMAC allegedly continued to attempt to collect amounts allegedly incurred during the Canos' bankruptcy case. On March 18, 2008, GMAC allegedly sent the Canos a statement demanding payment for "unpaid amounts," "late charge," and "other," totaling $5,936.71. A similar statement was allegedly sent on April 3, 2008, alleging that $5,932.44 was due. On May 6, 2008, GMAC allegedly sent a notice of intent to accelerate and foreclose if $5,193.57 was not paid within 30 days.

On May 19, 2008, the Canos filed this adversary proceeding on behalf of a nationwide class. Plaintiffs seek to represent a class consisting of:

> All residential mortgage customers of GMAC in the United States who filed a chapter 13 bankruptcy proceeding prior to October 16, 2005 and received a Chapter 13 discharge but to whom GMAC nonetheless represented that their mortgage was in arrears or that they owed any interest, fees, charges, or expenses not specifically approved by an order of a United States Bankruptcy Court.

Plaintiffs request relief based on alleged violations of: Plaintiffs' chapter 13 plans, court orders confirming Plaintiffs' plans, Federal Rule of Bankruptcy Procedure 2016(a), and §§ 362(a)(1), (3), (4), (5), and (6), 524, 1322(a)(1), 1322(b)(5), 1326(c), 1327, and 1328 of the Bankruptcy Code. Plaintiffs also assert claims for breach of contract, contempt, and abuse of process, and seek declaratory and injunctive relief. Plaintiffs seek relief pursuant to the Court's § 105 power. Plaintiffs seek actual and punitive damages, legal costs, and sanctions.

## 3. Pending Motions

Early in this adversary proceeding, GMAC filed a motion to dismiss and a motion to withdraw the reference. On November 10, 2008, the Court held a hearing on the motion to withdraw the reference and the motion to dismiss.

### A. Report and Recommendation

On April 2, 2009, the Court issued its Report and Recommendation recommending that the District Court not withdraw the reference to this Court. GMAC argued that withdrawal was mandatory because resolution of Plaintiffs' complaint would require this Court to interpret federal statutes that affect interstate commerce. GMAC also contended that there was cause for permissive withdrawal because resolution of the adversary by the District Court would lead to greater efficiencies.

The Court's Report and Recommendation found that this adversary proceeding was a core proceeding arising from Bankruptcy Code provisions and principles. Resolving the adversary will require close scrutiny of the Bankruptcy Code, not non-title 11 statutes. Bankruptcy courts are designed and are best suited for resolving core bankruptcy issues.

The Court's Report and Recommendation is pending in the District Court.

**B. Motion to Dismiss**

On April 29, 2009, GMAC filed a Motion to Dismiss Plaintiffs' First Amended Complaint (docket #42). GMAC generally asserts two bases for dismissal: (1) Plaintiffs' causes of action fail to state a valid claim; and (2) the Court lacks subject matter jurisdiction.

GMAC's failure to state a claim argument focuses on GMAC's mortgage contract rights and § 1322(b)(2) of the Bankruptcy Code. GMAC contends that its mortgage contracts allow GMAC to charge the fees and costs at issue and collect the fees and costs whenever GMAC chooses. GMAC contends that § 1322(b)(2) protects these contract rights in the bankruptcy process.

The Court has considered and rejected similar arguments in great detail in prior opinions. *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436 (Bankr. S.D. Tex. 2008); *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 643 (Bankr. S.D. Tex. 2007). GMAC has not persuaded this Court that its *Padilla* and *Rodriguez* holdings were wrong. No Circuit Court has subsequently addressed the issues decided in *Padilla* and *Rodriguez*. Lower courts have issued opinions that are consistent with the *Padilla* and *Rodriguez* holdings. *In re Rangel*, 2009 WL 1531961 (Bankr. S.D. Tex. May 29, 2009); *In re Hines*, 2009 WL 1111117 (Bankr. N.D. Miss. Apr. 22, 2009); *In re Wilborn*, 404 B.R. 841 (Bankr. S.D. Tex. 2009); *In re Wilborn*, 401 B.R. 872 (Bankr. S.D. Tex. 2009); *In re Moffitt*, 2009 WL 1916091 (Bankr. E.D. Ark. June 22, 2009); *In re Jones*, 400 B.R. 525 (Bankr. N.D. Miss. 2009); *In re Harris*, 2008 WL 924939 (Bankr. S.D. Tex. May 15, 2008); *In re Payne*, 387 B.R. 614 (Bankr. D. Kan. 2008); *In re Andrews*, 2007 WL 2793401 (Bankr. D. Kan. Sept. 26, 2007).

The bankruptcy court of the Eastern District of Pennsylvania did disagree with this Court's holdings. *Padilla v. GMAC Mortgage Corp. (In re Padilla)*, 389 B.R. 409 (Bankr. E.D.

Pa. 2008). The Pennsylvania bankruptcy court held that conduct constituting a breach of the confirmed plan did not also constitute a breach of the court order confirming the plan. *Id.* at 420. For the reasons set forth in this Court's *Padilla* and *Rodriguez* decisions, and as set forth in this Memorandum Opinion, the Court respectfully disagrees. *See In re Rodriguez*, 396 B.R. 436; *In re Padilla*, 379 B.R. 643. The Court notes that the Pennsylvania *Padilla* decision did hold that the disputed conduct was prohibited and subject to a remedy through § 105. The Pennsylvania *Padilla* decision differed from the Texas *Padilla* decision in that the Pennsylvania Court held that § 1327(a) rather than the court order confirming the plan created the legal right from which the § 105 remedy arose. *In re Padilla*, 389 B.R. at 433.

Essentially, GMAC reads too much into § 1322(b)(2). Section 1322(b)(2) prevents a chapter 13 plan from modifying a mortgage lender's contract rights. A chapter 13 debtor may not modify principal or interest payments or discharge fees and expenses allowed by the mortgage contract. But § 1322(b)(2)'s protections do not place mortgage lenders outside the court's purview.

Section 1322(b)(2) prevents a plan from modifying a mortgage lender's substantive contract rights, but § 1322(b)(2) does not allow a mortgage lender to ignore the procedural limits imposed by the Bankruptcy Code and Rules that govern how those rights are exercised. A mortgage lender must exercise its contract rights in the manner allowed by the Bankruptcy Code, Bankruptcy Rules, and court orders. Bankruptcy Rule 2016 requires mortgage lenders to disclose any fees and costs the mortgage lender intends to collect from the debtor. Enforcement of Rule 2016 is necessary to enforce the rights and obligations imposed by specific Code provisions. Failure to enforce Bankruptcy Code and Rule requirements would allow mortgage

lenders to deny debtors the promised fresh start, despite their diligent compliance with all that the Code and the court asked of them.

GMAC's jurisdictional argument is largely an attack on a bankruptcy court's authority to adjudicate a nationwide class action. GMAC alleges that this Court only has subject matter jurisdiction over bankruptcy cases filed in this district and adversary proceedings that relate to a bankruptcy case filed in this district. Accordingly, GMAC contends that this Court, at most, has jurisdiction only over claims filed by putative class members who filed bankruptcy cases in the Southern District of Texas, and lacks jurisdiction over the claims asserted by putative class members who filed bankruptcy cases outside of the Southern District of Texas.

As set forth below, the Court rejects GMAC's jurisdictional argument. The argument imposes a relational tie between adversary proceedings and individual bankruptcy cases that cannot be found in the jurisdictional statutes. Section 1334 provides three separate bases for bankruptcy court jurisdiction. Two of the bases require no link between an adversary proceeding and a bankruptcy case. The third basis does require a relation between an adversary proceeding and a bankruptcy case. The adversary proceeding must have the potential to impact a bankruptcy estate. However, the adversary proceeding need not impact a case filed in the same district as the adversary proceeding. Under the "related to" prong of § 1334, an adversary proceeding must have the potential to affect *a* bankruptcy case, but the statute does not require the affected bankruptcy case to be filed in the same court considering the adversary proceeding.

For the reasons set forth below, the Court grants in part and denies in part GMAC's motion to dismiss. The Court grants GMAC's motion to dismiss Plaintiffs' claims for violations of §§ 362, 506, 524, 1322(a)(1), 1322(b)(5), 1326(c), 1327, and 1328. The Court denies the balance of GMAC's motion.

## Jurisdiction and Venue

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under § 157(b)(2).

## Analysis

The Court considers GMAC's failure to state a claim and subject matter jurisdiction arguments separately below.

## 1. Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a court should dismiss a complaint if it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The issue in a 12(b)(6) motion is whether a plaintiff is entitled to offer evidence to support its claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, S. Ct. 3012, 82 L. Ed. 2d 139 (1984). The Court must determine, "in the light most favorable to the plaintiff, whether the complaint states any valid claim for relief." *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). All facts pled must be specific, not merely conclusory. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). All well-pleaded allegations contained in the plaintiff's complaint must be accepted by the court as true. *Albright v. Oliver*, 510 U.S. 266, 268, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994). A plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

The Supreme Court recently clarified a plaintiff's pleading requirements. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Court noted two principles courts should follow when evaluating a pleading. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 1949. "Second,

only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common senses." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]—'that the pleader is entitled to relief.'" *Id.*

GMAC largely asserts two independent bases for dismissing Plaintiffs' complaint pursuant to Rule 12(b)(6): (1) GMAC's alleged conduct did not violate the Bankruptcy Code because of § 1322(b)(2)'s protections; and (2) the Bankruptcy Code does not create a private cause of action to redress the conduct complained of in Plaintiffs' complaint. The Court considers GMAC's arguments separately below.

## A. Plaintiffs' Claims for Violations of Bankruptcy Code Provisions, Bankruptcy Rules, and Court Orders

Plaintiffs allege that GMAC violated the automatic stay, the discharge injunction, a host of chapter 13 Code provisions, Rule 2016, and the orders confirming Plaintiffs' chapter 13 plans. Plaintiffs also assert claims for breach of contract, contempt, and abuse of process. All theories are based on the same underlying conduct: misallocating plan payments and collecting undisclosed fees and costs.

The Court grants GMAC's motion to dismiss with respect to the majority of Plaintiffs' theories. The Court considers Plaintiffs' theories separately below.

### i. The Automatic Stay

Plaintiffs allege that GMAC violated the automatic stay through three separate courses of conduct: charging the disputed fees and costs to Plaintiffs' accounts, misallocating payments among principal, arrearages, and fees and costs, and sending Plaintiffs default notices while their

plans remained pending. The Court has previously considered § 362's application to improper charges and allocation of mortgage payments. *In re Padilla*, 379 B.R. 643. The Court reiterates its analysis from *In re Padilla* below.

Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay, applicable to all entities. 11 U.S.C. § 362(a). The stay acts as a "self-executing injunction." *See, e.g., In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003) (citing *Gruntz v. County of L.A.*, 202 F.3d 1074, 1082 (9th Cir. 2000)). The automatic stay has broad application and acts to restrain creditors from taking any action to continue collection efforts against the debtor or property of the estate. 11 U.S.C. § 362(a); *In re Chesnut*, 422 F.3d 298, 303 (5th Cir. 2005). The automatic stay prevents creditors from scrambling to collect a debtor's limited assets while providing a debtor breathing room so that an equitable disbursement of the debtor's assets may be made to creditors. *In re Chesnut*, 422 F.3d at 301.

The stay, however, does not operate to stay proceedings or claims that arise *post-petition* unless the creditor seeks to enforce such claims against property of the estate. 11 U.S.C. § 362(a); 3 COLLIER ON BANKRUPTCY, ¶ 362.03(3)(c) (15th ed. rev. 2006) (citing *Bellini Imps. Ltd. v. Mason & Dixon Lines, Inc.*, 944 F.2d 199, 201 (4th Cir. 1991)).

Once Plaintiffs' chapter 13 plans were confirmed, GMAC's mortgage rights no longer arose only from their pre-petition contracts. Their rights arose from the confirmed plan.

Section 1327(a) provides:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11

11 U.S.C. § 1327(a). As described in greater detail later in this Memorandum Opinion, GMAC's rights to charge and collect the disputed fees and costs were incorporated into Plaintiffs' plans through §§ 1322(b)(2) and (5).

A confirmed plan constitutes a new arrangement between the debtor and creditors. *In re Stratford of Tex., Inc.*, 635 F.2d 365, 368 (5th Cir. 1981)[3]; *In re Dow Corning, Corp.*, 456 F.3d 668, 676 (6th Cir. 2006) ("the plan is effectively a new contract between the debtor and its creditors") (citing *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993)). A plan's contents will be shaped by claims that arose prior to a debtor's bankruptcy petition. However, after plan confirmation, a creditor's rights are defined by the confirmed plan. *In re Talbot*, 124 F.3d 1201, 1209 (10th Cir. 1997) ("[B]ecause 'creditors are limited to those rights that they are afforded by the plan, they may not take actions to collect debts that are inconsistent with the method of payment provided for in the plan.'") (quoting 8 COLLIER ON BANKRUPTCY, ¶ 1327.02[1][b] (15th ed. rev. 1996)). Consequently, a pre-petition claim provided for in a confirmed plan is no longer simply a pre-petition claim. The claim is a right to payment arising from the confirmed plan.

Because confirmation of Plaintiffs' chapter 13 plans converted GMAC's claims for reimbursable fees and costs into claims arising under a confirmed plan—rather than a claim arising under a pre-petition contract—GMAC did not violate the automatic stay by enforcing the provisions of Plaintiffs' confirmed plans. Even if GMAC made errors in enforcement of the

---

[3] Section 1141(a) uses similar language to § 1327 to describe the effect of a chapter 11 plan's confirmation. Section 1141(a) states: "Except as otherwise provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." 11 U.S.C. § 1141(a). Accordingly, cases decided under § 1141(a) with respect to this issue are analogous.

plans, those errors do not violate § 362(a)(1), (5), or (6) because they were an enforcement of a post-petition plan obligation rather than an enforcement of a pre-petition claim.

A creditor can violate the automatic stay by attempting to collect post-petition debts if the creditor attempts to collect the debt from property of the estate. Section 362(a)(3) precludes "any act *to obtain possession* of *property of the estate* or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3) (emphasis added). Plaintiffs allege that charging the fees and costs to their accounts, allocating payments made to offset principal and arrearage obligations, and sending alleged default notices constitute "act(s) to obtain possession" of estate property.

The Court concludes that GMAC's alleged conduct did not constitute an "act to obtain possession" or seek to acquire "property of the estate," as those terms are defined by § 362(a)(3). The conduct in question involved two separate acts: an initial deposit within a general account, and a latter allocation from the general account to individual accounts. The first act involved "property of the estate," the second did not. Only the second act, involving non-estate property, was allegedly wrongful.

Plaintiffs' payments were "property of the estate" when sent to GMAC. 11 U.S.C. § 1306(a)(2). However, when GMAC received the Plaintiffs' payments, they presumably deposited the funds into a bank account. Once GMAC deposited the payments into its own account, the funds were no longer property of the estate. *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 21, 116 S. Ct. 286, 133 L. Ed. 2d 258 (1995). The deposited funds were GMAC's property.

Thus, GMAC's only "act" with respect to "property of the estate" was the receipt and initial deposit of the payments. No one contends that GMAC's receipt and initial deposit of

funds paid voluntarily and pursuant to a confirmed plan violated the automatic stay. After depositing the payments to its own account, GMAC may have allocated (even wrongly) portions of the payments to offset reimbursable fees and costs charged. However, the posting of an item from one internal account to another is not an act to obtain possession of estate property. GMAC already had possession when they received the payment. The improper allocation of payments may violate the orders confirming the plans, but it does not violate the automatic stay.[4]

Nor would GMAC's alleged allocation of payments contrary to the plan or sending of default notices constitute a prohibited act to obtain estate property. The mere posting of a charge or sending a default notice, without more, is not "an act to obtain possession." *Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1, 3 (1st Cir. 2003). The primary purpose of the automatic stay is to prevent "the disorderly, piecemeal dismemberment of the debtor's estate outside the bankruptcy proceedings." *Id.*

The contention that misallocating funds or sending default notices violates § 362(a)(3) misinterprets the scope of "acts" covered by that provision. Section 362(a)(3) is essentially an "anti-grab-law" statute. The intent and purpose of (a)(3) is to prohibit physical taking of property or refusal to turn-over property within a creditor's physical possession. 3 COLLIER ON BANKRUPTCY, ¶ 362.03[5] (15th ed. rev. 2006) (noting that § 362(a)(3) "requires that no entity grab non-estate property *from* the estate") (emphasis added). GMAC's alleged misallocation of funds and sending of default notices did not involve grabbing property. Rather, GMAC's alleged conduct would, at most, constitute a breach of the confirmed plan.

---

[4] Because any improper allocation did not involve "property of the estate," § 362(a)(4) is also not applicable. Section 362(a)(4), like § 362(a)(3), requires the prohibited "act" to be taken against "property of the estate." As set forth below, once the funds were received by the Lenders, they were no longer property of the estate. *Strumpf*, 516 U.S. at 21.

The Supreme Court has held that a mere breach of an obligation, without an accompanying physical taking or possession, does not violate § 362(a)(3). In *Strumpf,* a debtor argued that a bank's refusal to pay the debtor monies deposited in the debtor's bank account violated § 362(a)(3). *Citizens Bank of Md. v. Strumpf,* 516 U.S. 16, 21, 116 S. Ct. 286, 133 L. Ed. 2d 258 (1995). The Court disagreed, holding that the "refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise." *Id.*

Congress's decision to use different language to define prohibited "acts" within § 362(a)'s subparts further clarifies (a)(3)'s anti-grab nature. Congress prohibited distinct acts within subsections of § 362(a). Subsection (a)(3) prohibits acts with reference to "possession" and "control" ("any act to obtain possession . . . or exercise control"). Subsection (a)(6) prohibits an "act to collect, assess, or recover." Physical possession or control is not required. Not every infringement on a debtor violates § 362(a).

The Court notes that its conclusion regarding the applicability of the automatic stay varies from the conclusion reached by Judge Bohm in *In re Sanchez,* 372 B.R. 289 (Bankr. S.D. Tex. 2007). Although *Sanchez* is a carefully drafted and well-reasoned opinion, the Court respectfully disagrees with Judge Bohm's conclusions on this narrow issue.

Judge Bohm takes a more holistic approach to the question and concludes that the application of the payments by the lender in *Sanchez* was a stay violation because it should be considered a single act along with the deposit of the funds. However, this holistic approach fails to account for the purpose of § 362(a)(3). As set forth above, the purpose of § 362(a)(3) is to prevent creditors from involuntarily grabbing estate assets. Applying § 362(a)(3) to a situation where a debtor makes a voluntary payment (although one that is improperly applied) expands the

scope of § 362(a)(3) beyond its apparent purpose. The Court respectfully concludes that the holistic approach taken by Judge Bohm converts any contract breach into a stay violation and runs afoul of the Supreme Court's teachings in *Citizens Bank of Maryland v. Strumpf*.

The language used by the Supreme Court, in its unanimous opinion, is instructive:

> [W]e are unpersuaded by respondent's additional contentions that the administrative hold violated §§ 362(a)(3) and 362(a)(6). Under these sections, a bankruptcy filing automatically stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title," § 362(a)(6). Respondent's reliance on these provisions rests on the false premise that petitioner's administrative hold took something from respondent, or exercised dominion over property that belonged to respondent. That view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor, *see Bank of Marin v. England*, 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966); *Keller v. Frederickstown Sav. Institution*, 193 Md. 292, 296, 66 A.2d 924, 925 (1949); and petitioner's temporary refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise.

*Strumpf*, 516 U.S. at 21.

In *Strumpf*, the Supreme Court declined to address the effect of a chapter 13 plan confirmation on the parties' rights. *Strumpf*, 516 U.S. at 21 n.* ("We decline to address respondent's contention, not raised below, that the confirmation of his Chapter 13 Plan under 11 U.S.C. § 1327 precluded petitioner's exercise of his setoff right."). As described later in this Memorandum Opinion, the Court holds that GMAC is bound by orders confirming Plaintiffs' chapter 13 plans. Accordingly, this Memorandum Opinion agrees with Judge Bohm's conclusion that the alleged conduct is prohibited and—if proven—that Plaintiffs are entitled to relief. It is the statutory sources of the relief on which this Court and Judge Bohm vary.

For the reasons set forth above, the Court concludes that Plaintiffs have not stated a claim for violations of § 362(a) by alleging that GMAC misapplied payments or sent default notices. The Court dismisses Plaintiffs' § 362 claims.

### ii. The Discharge Injunction

Sections 524 and 1328 generally provide that the Court must grant a chapter 13 debtor a discharge upon the debtor's completion of all plan payments, and the Court's discharge order operates as an injunction precluding creditors from attempting to collect discharged debts. 11 U.S.C. §§ 524, 1328. However, not all debts are discharged.

Subsections (1)–(4) of § 1328(a) excepts four types of debts from the chapter 13 discharge. 11 U.S.C. § 1328(a)(1)–(4). Subsection (1) excepts any debts "provided for under section 1322(b)(5)." *Id.* Section 1322(b)(5) provides that the debtor's chapter 13 plan may provide for the "curing of any default" and "maintenance of payments." As discussed later in this Memorandum Opinion, the "maintenance of payments" provision of § 1322(b)(5) affords debtors the right to stay current on their mortgage obligations, including the fees and costs at issue. A debtor can only remain current if a mortgage lender seeks recovery of fees and costs it intends to collect when they are incurred. A debtor cannot remain current if a lender seeks to collect fees and costs assessed over a five year plan in a single, aggregate, lump sum demand. Accordingly, the fees and costs at issue are § 1322(b)(5) amounts excepted from discharge by § 1328.[5]

Plaintiffs have cited numerous cases holding that mortgage lenders can be liable for violation of the discharge injunction based on attempts to collect arrearages, fees, and costs

---

[5] The Court notes that mortgage lenders may be liable for a violation of the discharge injunction for cases filed after 2005. The 2005 Bankruptcy Code amendments added subsection (i) to § 524, which provides that "the willful failure of a creditor to credit payments received under a plan confirmed under this title . . . shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor." 11 U.S.C. § 524(i). This provision only applies to cases filed before October 17, 2005. The putative class does not include any such cases.

incurred pre-petition or during the course of the plan after the debtor received a discharge. *See, e.g., Miller v. Countrywide Home Loans (In re Miller)*, 2007 WL 81052 (Bankr. W.D. Pa. Jan. 9, 2007); *McDonald v. Bank Fin. (In re McDonald)*, 336 B.R. 380 (Bankr. N.D. Ill. 2006); *In re Chess*, 268 B.R. 150, 158–59 (Bankr. W.D. Tenn. 2001). The Court respectfully disagrees with these cases.  As the next section of this Memorandum Opinion explains, the Court does not believe that GMAC's alleged conduct, if proven, is immune from regulation and sanction from the Court.  The Court simply disagrees with the legal basis for regulating mortgage lenders' conduct, at least with respect to cases filed before October 17, 2005.

The Court dismisses Plaintiffs' claims based on § 524 and § 1328 for failure to state a claim, with respect to putative class members whose petitions were filed before October 17, 2005.

### iii. Violation of Chapter 13 Code Provisions

The chapter 13 provisions cited by Plaintiffs largely define the mandatory and permissive contents of a plan rather than afford debtors substantive rights that would give rise to a private cause of action.  For example, § 1322(a)(1) provides that the trustee shall have control over the debtor's income to the extent necessary to make plan payments. 11 U.S.C. § 1322(a)(1). Section 1326(c) provides that, generally, the trustee shall make plan payments to creditors. 11 U.S.C. § 1326(c). Both are administrative provisions that define trustee powers and obligations.

Sections 1322(b)(2) and (b)(5) define what the debtor may and may not include in a plan. The provisions bind no other party prior to plan confirmation.  Rights only arise from the provisions after the court has issued an order confirming a plan that incorporates those rights. Ultimately, the court order gives rise to the rights.

Section 506(b) specifies the extent to which secured creditors are entitled to interest and other reasonable fees and costs.[6] The provisions, independent of a confirmed plan, do not grant debtors substantive rights.

However, the cited chapter 13 Code provisions are still significant to this dispute. The heart of the complaint is based on alleged violations of court orders confirming Plaintiffs' chapter 13 plans and Rule 2016. The court orders confirming Plaintiffs' chapter 13 plans incorporate many of the Code provisions. Though the Code provisions, in the abstract, may not provide a basis for a remedy, the court orders requiring compliance with the Code provisions do. The integrity of the judicial system and the purposes of the Bankruptcy Code cannot be honored if the Court does not enforce court orders and rules that are integral to enforcing compliance with the Code.

### iv. Violation of Court Orders and Rule 2016

GMAC's failure to state a claim argument with respect to Plaintiffs' claims for violation of court orders and Rule 2016 rests primarily on two bases: (a) § 1322(b)(2) protects a mortgage lender's right to collect fees and expenses pursuant to their pre-petition mortgage contract; and (b) many of the fees and expenses were not provided for by Plaintiffs' plans because they arose post-confirmation.

The Court has previously considered GMAC's arguments in prior opinions dealing with similar issues. *In re Rodriguez*, 396 B.R. 436; *In re Padilla*, 379 B.R. 643. GMAC has not

---

[6] This Court previously held that fees or costs not authorized by § 506(b) and charged during the narrow window between the date of the bankruptcy petition and the date of plan confirmation could give rise to a disgorgement claim. *In re Padilla*, 379 B.R. at 654–56. However, the Court held that the violation of Rule 2016, not § 506(b), ultimately gave rise to the disgorgement claim. *Id.* The Court also held that § 506(b) has no application after a chapter 13 plan is confirmed. *Id.* at 656. Plaintiffs' pled facts predominately, if not entirely, refer to post-confirmation conduct.

persuaded the Court that its prior opinions were incorrect. Though § 1322(b)(2) protects the substantive rights provided by a mortgage contract, § 1322(b)(2) does not allow mortgage lenders to exercise those rights without regard to the Bankruptcy Code, rules, and court orders. Plaintiffs' plans incorporated GMAC's mortgage contracts. Accordingly, the court orders and Code provisions incorporated by the orders controlled the manner in which GMAC could exercise its contract rights. Additionally, Rule 2016 requires creditors to disclose fees and costs and the Court must enforce Rule 2016 to ensure compliance with the court orders and incorporated Code provisions. To the extent GMAC collected fees contrary to the directions of the court orders confirming Plaintiffs' plans or without Rule 2016 disclosure, GMAC violated the orders confirming Plaintiffs' chapter 13 plans and Rule 2016.

Chapter 13 of the Bankruptcy Code includes several provisions drafted specifically to deal with mortgages. Plaintiffs' claims and GMAC's defenses cannot be understood without an analysis of how mortgages are treated under chapter 13. The Court does not include the following analysis of § 1322(b) because § 1322(b) provides a cause of action for Plaintiffs. Rather, the Court analyzes the mechanics of § 1322(b) to explain why the provision does not immunize GMAC from claims based on alleged violations of court orders and Rule 2016.

Two sections of the Bankruptcy Code are at the heart of this dispute—sections 1322(b)(2) and 1322(b)(5). Sections 1322(b)(2) and (b)(5), together, define how a mortgage lender will be paid in a chapter 13 case.

Section 1322(b)(2), the "anti-modification" provision, provides that a chapter 13 plan may:

> modify the rights of holders of secured claims, other than a claim
> that is secured only by a security interest in real property that is
> the debtor's principal residence, or of holders of unsecured claims,
> or leave unaffected the rights of holders of any class of claims;

20

11 U.S.C. § 1322(b)(2). The provision grants mortgage lenders special rights no other creditors share. The provision effectively incorporates a mortgage lender's pre-petition mortgage contract into the chapter 13 plan by precluding modification of the mortgage lender's contractual rights. *Id.* at 659–60 (citing *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 328, 113 S. Ct. 2106, 124 L. Ed. 2d 228 (1993)). Accordingly, a chapter 13 plan may not reduce the lender's claim to the value of the collateral under § 506. A plan may not alter the contractual interest rate. Nor may the plan exclude collection of fees and costs incurred post-petition and allowed by the mortgage contract.

Most mortgage contracts, including GMAC's, allow lenders to incur reasonable fees and costs necessary to protect their security interest in a debtor's home. Many mortgage contracts, including GMAC's, also contain provisions stating that the lender may charge and collect the incurred fees and costs at any time. Mortgage lenders often, in fact, incur fees and costs in a bankruptcy proceeding. GMAC may have incurred such fees and costs in Plaintiffs' cases. For the purposes of this motion, the Court assumes that GMAC also waited (at least in some instances) until Plaintiffs' bankruptcy cases were dismissed or closed before seeking to collect the fees and costs. Pursuant to § 1322(b)(2), GMAC has the right to charge and collect these fees and costs and a chapter 13 plan cannot preclude exercise of this right.

However, Congress balanced mortgage lenders' protections by granting debtors the right to cure arrearages and remain current on the mortgage debt. Section 1322(b)(5) provides that a plan may:

> notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b)(5). Section 1322(b)(5) provides an explicit exception to § 1322(b)(2)'s prohibition of mortgage modifications. Regardless of the mortgage contract, § 1322(b)(5) allows debtors to cure mortgage arrearages and maintain current payments through a chapter 13 plan. 11 U.S.C. § 1322(b)(5). Essentially, § 1322(b)(5) does not allow modification of a creditor's substantive right to payments, but does modify how a mortgage lender can exercise these substantive rights.

In *In re Mendoza*, the Fifth Circuit clarified the difference between modifying the substantive right to payment of amounts allowed by the contract and the method of collecting those amounts. *Mendoza v. Temple-Inland Mortgage Corp. (In re Mendoza)*, 111 F.3d 1264 (5th Cir. 1997). In *Mendoza*, the debtor sought to modify his chapter 13 plan to cure a post-petition default. *Id.* at 1267. The lender objected, alleging that § 1322(b)(2) precluded the court from modifying the plan to allow for curing of the post-petition default. *Id.*

The Fifth Circuit noted that "[t]here is a distinction between modifying the rights of a mortgagee where the debtor proposes to pay his mortgage at an interest rate lower than that provided for in the mortgage, and modifying a plan of reorganization to include postpetition mortgage payments which are in arrears." *Id.* Even though the mortgage contracts may have allowed the lender to foreclose or accelerate a loan based on a default, §§ 1322(b)(5) and 1329 of the Bankruptcy Code nevertheless grant debtors the ability to cure that default over time and through a chapter 13 plan. The Fifth Circuit noted that this reading of § 1322(b)(5) and the limitations the reading imposes on § 1322(b)(2) are necessary to conform with the congressional policy behind chapter 13. *Id.* at 1268–69. The Court noted that a primary purpose of chapter 13 and § 1322(b)(5) is "to provide homeowners with the continuing right to cure defaults and preserve their primary asset." *Id.* at 1269.

The *Mendoza* Court also cited with approval the 11th Circuit's *In re Hoggle* opinion. *Id.* at 1268; *Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle)*, 12 F.3d 1008 (11th Cir. 1994). The *Hoggle* court also turned to legislative history and congressional intent to define the breadth and limits of §§ 1322(b)(2) and (b)(5). *In re Hoggle*, 12 F.3d at 1010–11. The *Hoggle* Court noted that prior to § 1322(b)(5)'s enactment, courts fashioned equitable remedies through injunctions to preclude foreclosures and give debtors in default the opportunity to save their homes. *Id.* at 1010. The *Hoggle* Court stated that Congress enacted § 1322(b)(5) to codify a means to "permit homeowners to utilize [chapter 13's] flexible provisions for debt relief without sacrificing their homes." *Id.*

The Fifth Circuit's *Mendoza* opinion teaches that debtor and mortgage lender obligations are not fixed and buried from the Court's supervision after a chapter 13 plan is confirmed. Section 1322(b)(5) embodies a "continuing right" to maintain a mortgage account. *In re Mendoza*, 111 F.3d at 1269. A mortgage lender cannot charge undisclosed fees and costs to a debtor's account throughout a debtor's bankruptcy case and seek payment only after the debtor has received a chapter 13 discharge consistent with § 1322(b)(5), *Mendoza*, and the basic purposes of consumer bankruptcy.

Section 1322(b)(5)'s "continuing right" to maintain a mortgage account includes the right to cure and maintain payments arising from fees and costs charged to the debtor's mortgage account post-petition. A debtor can only cure these defaults and keep her mortgage current if a mortgage lender discloses and charges these amounts as they arise. Hiding the charges and waiting until after the debtor has received a discharge before seeking collection of the amounts precludes the debtor from exercising the debtor's "continuing right" to cure defaults and remain current. Hiding the charges and demanding the amounts post-discharge also defeats the

congressional intent behind § 1322(b)(5) to allow debtors to "preserve their primary asset," their homestead, and the fresh-start purpose of the Bankruptcy Code. *In re Mendoza*, 111 F.3d at 1269. In return for devoting all disposable income to a chapter 13 plan and living under a Spartan budget for five years, the Bankruptcy Code affords debtors a new financial life, free from the burdens of default. Hiding charges and demanding payment of the charges post-discharge places debtors in default on day one after their discharge.

After a plan is confirmed, debtor and creditor rights and responsibilities are defined by the plan and the court order confirming the plan. Pursuant to § 1322(b)(2) and (b)(5), a mortgage lender's contractual right to collect fees and costs allowed by the contract are incorporated within the chapter 13 plan. *In re Padilla*, 379 B.R. at 659–60 (citing *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 328, 113 S. Ct. 2106, 124 L. Ed. 2d 228 (1993)); *In re Wright*, 492 F.3d 829, 832 (7th Cir. 2007) (holding that where a Code provision exempts economic rights from modification by the Code, the parties are left "to their contractual entitlements" governed by state law). Section 1322(b)(2) prohibits a plan from modifying a mortgage lender's contract rights other than the modifications allowed by § 1322(b)(5). The Court order confirming the plan binds the debtor and mortgage lender to the allocation scheme provided for by the plan. 11 U.S.C. § 1327(a).[7] The Court order imposes reciprocal rights and obligations on the debtor and the mortgage lender. Both the debtor and the mortgage lender must comply with the plan.

The debtor's obligations ensure payments to the mortgage lender and protection of the lender's collateral. Accordingly, the debtor must make all payments within the time and in the amount prescribed by the plan. If the debtor misses a payment, the debtor violates the terms of the plan and the lender may seek relief such as dismissal of the case or termination of the

---

[7] Section 1327(a) provides: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).

automatic stay. Upon dismissal or termination, the debtor loses the protections of the automatic stay and the lender may foreclose on the home.

The creditor's obligations ensure that the debtor can cure arrearages and emerge from bankruptcy no longer facing foreclosure because of default. Accordingly, the creditor must allocate payments pursuant to the plan. Improper allocation of payments deprives a debtor of the "continuing right" provided by § 1322(b)(5) to cure arrearages and remain current on mortgage obligations and the promised fresh start. Thus, the mortgage lender must allocate payments amongst principal, interest, and arrearages in the manner prescribed by the plan. If a mortgage lender allocates payments that the plan dedicates to pre-petition arrearages to principal and interest or a post-petition charge, without court approval, the mortgage lender violates the terms of the plan and the lender may be subject to liability for violating the order confirming the plan.

If a debtor completes the arduous three or five-year journey through chapter 13, the Bankruptcy Code grants the debtor a fresh start. Section 1328 grants the debtor a discharge of most debts provided for by the chapter 13 plan. Upon receiving a discharge, the debtor is immune from personal liability on any discharged debt. A creditor cannot attempt to collect a discharged debt without violating § 524's explicit injunction against such collection efforts.

Not all debts are discharged by § 1328. Principal, interest, and arrearages provided for by the plan are not discharged. Nor are a mortgage lender's reimbursable fees and costs incurred (but not collected) discharged. Though the reimbursable fees and costs are provided for by the plan through § 1322(b)(2)'s incorporation of the contractual right to collect the fees and costs, mortgage debts provided for by the plan but not paid by the debtor are not discharged. As discussed § 1328(a)(1) specifically excepts from discharge "debts provided for under section 1322(b)(5)."

The fact that the debts are not discharged does not mean that the debts are not satisfied. When the plan is fully performed according to its terms, the arrearage has been cured and the ongoing mortgage payments have been maintained. Sections 1322(b)(5) and 1322(c), allowing debtors to cure defaults and remain current on their mortgage obligations, and the court order that confirmed the plan and imposed the binding effect of a plan provided by § 1327(a), have the effect of bringing debtors current on their mortgage obligations. Accordingly, post-discharge attempts to collect reimbursable fees and costs incurred but not disclosed while a chapter 13 case remains pending violates the court order confirming the chapter 13 plan. Alternative interpretations of §§ 1322(b)(5), 1322(c) and 1327(a) would eviscerate the underlying fresh start purpose of chapter 13.

Enforcement of the court orders confirming a chapter 13 plan, § 1329(a)'s right to modify a plan, § 1322(b)(5)'s "continuing right," and the fresh start, all require enforcement of Federal Rule of Bankruptcy Procedure 2016(a). *In re Padilla*, 379 B.R. 657–62. Rule 2016(a) requires any party who seeks compensation from a debtor's estate to file with the court an application setting forth the source of the costs and the amounts requested.[8] Under the plain language of Rule 2016, a mortgage lender must file a Rule 2016 application before collecting any reimbursable fees and costs while a chapter 13 case remains pending.

Section 1329(a) provides:

"At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor . . ."

---

[8] Rule 2016(a) provides: "Application for Compensation or Reimbursement. An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested . . . *The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity.*" Fed. R. Bankr. P. 2016(a) (emphasis added).

11. U.S.C. § 1329(a). Section 1322(b)(5) affords debtors a "continuing right" to cure defaults and maintain payments. *Mendoza*, 111 F.3d 1264. Debtors cannot cure defaults pursuant to § 1325(b)(5) and § 1329(a) if lenders do not disclose the defaults. Absent the notice and court oversight triggered by Rule 2016(a), the debtor would have no knowledge of undisclosed, accruing fees and costs charged to their account. The concepts of "curing" an arrearage, "maintenance of payments," and the fresh start would be ephemeral.

A Bankruptcy Court is responsible for "administer(ing) the estate in an efficient and equitable manner, and protect(ing) the assets of the estate from depletion." *Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.)*, 794 F.2d 1051, 1055 (5th Cir. 1986). The Bankruptcy Rules help Courts fulfill their administrative responsibilities. Federal Rule of Bankruptcy Procedure 1001 states that the Rules are to be "construed to secure the just, speedy, and inexpensive determination of every case and proceeding." FED. R. BANK. P. 1001. The Rules are to be applied broadly. FED. R. BANKR. P. 1001, Advisory Committee Note (1983) ("These rules apply to *all* cases filed under the Code *except* as otherwise *specifically* stated") (emphasis added). Moreover, the primary purpose of bankruptcy laws is to ensure an efficient and just administration of a debtor's affairs. *Katchen v. Landy*, 382 U.S. 323, 328, 86 S. Ct. 467, 15 L. Ed. 2d 391 (1966) ("[T]his Court has long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period' . . .") (quoting *Ex Parte Christy*, 44 U.S. 292, 312–14, 3 How. 292, 11 L. Ed. 603 (1845)).

The Supreme Court recently reaffirmed that the Court must issue orders that are necessary to assure that the purposes of the Bankruptcy Code are fulfilled. *Marrama v. Citizens Bank of Mass. (In re Marrama)*, 549 U.S. 365, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007). Judge

Rosenthal recently applied *Marrama* to uphold this District's adoption of a local rule generally mandating the payment of chapter 13 mortgages through a trustee.   As Judge Rosenthal explained:

> *Marrama* upheld a pragmatic remedy fashioned by a bankruptcy judge under section 105(a) to achieve a result that the Code clearly required, despite the apparently inconsistent approach of another Code section that was unclear or ambiguous.  In this case, a similar application of section 105(a) is warranted. Section 1322(b)(2) expressly requires that the mortgagee receive its normal monthly payments.  Section 1326(a)(1) states that the debtor "shall" begin making payments not later than 30 days after filing the plan and provides that the court may order "otherwise," which allows the court to require conduit payments through the trustee.   Section 1326(a)(2) states that the trustee "shall" retain payments "proposed by the plan" made by the debtor to the trustee before confirmation.  Section 1326(c) states that the trustee "shall" make payments to creditors "under the plan."  The Code prohibits modifying the rights of mortgage lenders and creates a presumption in favor of payments disbursed through the trustee.  The courts recognize the many reasons that conduit payment of mortgage installments protects debtors, creditors, and the integrity of the bankruptcy process.   The interplay among the provisions that protect mortgage lenders' rights, those that authorize conduit payments, and those that require the trustee to retain some—but not all—payments by the debtor is unclear.  Section 105(a) properly applies to allow the trustee to disburse the one or two monthly mortgage payments that are due postpetition but preconfirmation.  The critical aspect of the payments at issue is not whether they are "under the plan" or "adequate protection" payments, but rather that they are simply conduit payments.  Given the clear and explicit command of section 1322(b) to preserve the rights of holders of mortgage loans on the debtor's principal residence, and given the ambiguous interplay of sections 1326(a)(1) and (2), the bankruptcy court's reasoned decision to allow the trustee to distribute mortgage payments received from the debtor in the short period between filing the petition and confirming the plan as well as after plan confirmation was an appropriate application of section 105(a), consistent with *Marrama's* approach.

*Perez v. Peake (In re Peake),* 373 B.R. 468, 488 (S.D. Tex. 2007).

The Court can not administer an estate in a just, speedy, inexpensive, efficient, and equitable manner without requiring creditors to file a Rule 2016(a) application for fees and costs that creditors seek to collect post-confirmation.  Without Rule 2016(a) applications, the Court

cannot ensure compliance with court orders or protect a debtor's rights under § 1322(b)(5) and the right to a fresh start.

GMAC contends that bankruptcy courts cannot interpret the Bankruptcy Code or rules in a manner that violates its substantive right to charge and collect fees and costs pursuant to its pre-petition mortgage contracts provided by § 1322(b)(2). GMAC argues that requiring mortgage lenders to file a Rule 2016 application to collect fees and costs and otherwise regulating their management of a chapter 13 debtor's mortgage accounts violates § 1322(b)(2). The Court disagrees.

The Supreme Court's *Nobelman* decision noted that § 1322(b)(2) did not immunize all mortgage lender rights from the effects of the Bankruptcy Code. *Nobelman*, 508 U.S. at 330. The automatic stay limits a lender's ability to exercise contractual foreclosure rights. *Id.* Additionally, § 1322(b)(5) authorizes debtors to cure defaults over time through a plan, despite contrary provisions within a lender's contract. *Id.* Thus, specific provisions like the automatic stay and § 1322(b)(5) may limit a lender's ability to exercise their rights. *Id.* However, those limits "are independent of the debtor's plan or otherwise outside § 1322(b)(2)'s prohibition." *Id*; *In re Mendoza*, 111 F.3d at 1267 ("[t]here is a distinction between modifying the rights of a mortgagee where the debtor proposes to pay his mortgage at an interest rate lower than that provided for in the mortgage, and modifying a plan of reorganization to include postpetition mortgage payments which are in arrears.").

The general rule taken from § 1322(b)(2)'s plain language and *Nobleman* is that a mortgage lender's economic rights continue unimpaired through a chapter 13 plan. However, § 1322(b)(2) does not immunize a lender's compliance with other Bankruptcy Code provisions and rules.

29

Collecting fees and costs without filing a Rule 2016 application or after the completion of a debtor's plan obligations would violate the order confirming the debtor's chapter 13 plan. A mortgage lender may not disrupt the payment allocation scheme provided by the plan by diverting amounts dedicated to arrearages or principal and interest without court approval. Until the Court reviews a Rule 2016 application and issues an order modifying the payment allocation scheme provided by a chapter 13 plan, a mortgage lender may not collect fees and costs without violating the order confirming the debtor's plan.

For nearly a century, the Supreme Court has recognized that individual debtors who successfully emerge from bankruptcy should receive a fresh start. *Williams v. U.S. Fid. & Guar., Co.*, 236 U.S. 549, 554–55, 35 S. Ct. 289, 59 L. Ed. 713 (1915).

The fresh start "gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. The various provisions of the Bankruptcy Act were adopted in light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act." *Local Loan Co.*, 292 U.S. at 244–45.

The Bankruptcy Code has seen many amendments over the years, but the fundamental fresh start purpose remains. The Supreme Court "has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a 'new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991) (quoting *Local Loan Co.*, 292 U.S. at 244). Recently, the Supreme Court reiterated that the fundamental

purpose of the Bankruptcy Code is to grant the "honest but unfortunate debtor" a "fresh start." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007) (quoting *Grogan*, 498 U.S. at 286–87). This adversary proceeding raises allegations that, if proven, corrupt the promised fresh start.

Chapter 13 and the fresh start purpose do not allow a lender to place a former debtor in default and foreclose on a debtor's home for undisclosed charges that accrued during the course of the bankruptcy case.   The Supreme Court, Circuit Courts, and bankruptcy courts in all jurisdictions speak of the fresh start for a reason.  Chapter 13 exists for a purpose.

For the reasons set forth above, the Court denies GMAC's failure to state a claim argument with respect to alleged violations of orders confirming Plaintiffs' chapter 13 plans and Rule 2106.

### v. Breach of Contract, Abuse of Process, and Contempt

Plaintiffs allege that GMAC's alleged collection of unapproved fees and costs violated the contract formed by their confirmed plans, and constituted abuse of process and contempt. The same allegations give rise to Plaintiffs' claims for violation of the court orders confirming their chapter 13 plan and Rule 2016.  At this stage in the litigation, the Court cannot discern whether Plaintiffs' contract, abuse of process, and contempt claims may afford Plaintiffs relief that is unavailable under their other claims or are simply duplicative.  Accordingly, the Court declines to consider whether Plaintiffs can assert these claims based on alleged violations of Plaintiffs' Chapter 13 plans.  The Court will consider these claims, if necessary, at the conclusion of trial.

### vi. Remedies

GMAC seeks dismissal of Plaintiffs' request for declaratory and injunctive relief, and legal costs. It is premature to consider what, if any, remedies are warranted. The Court will consider remedies at the appropriate time.

### vii. Sufficiency of the Pleading

GMAC also contends that Plaintiffs have pled insufficient facts to support certain claims. The Court disagrees. Plaintiffs' First Amended Complaint provides numerous specific allegations with respect to the Canos. Plaintiffs pled specific facts with respect to discrepancies between the amounts and obligations owed under their note and mortgage contract and amounts reflected on notices sent to the Canos while their case remained pending and after they received a discharge. Plaintiffs allege that these discrepancies arose from improper allocation of payments and charging undisclosed fees and expenses. The pleadings are more than sufficient to survive dismissal under Rule 12(b)(6).

### B. Civil Contempt and Section 105

GMAC contends that the Bankruptcy Code does not authorize Plaintiffs to assert a private right of action to redress Plaintiffs' claims. GMAC contends that the Court cannot read a private right of action into the implicated Bankruptcy Code provisions and Rules in contravention of the statute's plain reading and Congress's intent. GMAC contends that Plaintiffs' remedies are limited to state law breach of contract claims and civil contempt from the individual courts whose orders were allegedly violated. The Court limits its analysis of GMAC's arguments to the claims that the Court has not dismissed or refrained from considering: claims for violation of court orders confirming plans and Rule 2016.

The Court agrees that this Court does not have the authority to create private rights of action from Bankruptcy Code provisions that Congress did not intend to enforce though private rights of action. The Court agrees that neither §§ 1322(a)(1), 1322(b)(5), 1326(c), 1327, 1328 or Bankruptcy Rule 2016, alone, create a private right of action. However, the Court need not create a private right of action where none exists to grant Plaintiffs the relief they seek. Section 105 of the Bankruptcy Code grants courts broad authority to enter any order or judgment "necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Plaintiffs allege that GMAC has engaged in a nationwide, systematic practice of charging and hiding fees and costs without disclosing them to the bankruptcy court and in contravention of Bankruptcy Code provisions, Bankruptcy Rules, Court orders, and the fresh start purpose of chapter 13. If Plaintiffs prove their allegations, the remedy Plaintiffs seek may be "necessary or appropriate to carry out the provisions" of the Bankruptcy Code.

The evidence may demonstrate, as GMAC suggests, that only contract or civil contempt sanctions are appropriate. The evidence may demonstrate that GMAC did nothing wrong and no judgments should be issued. But the court cannot consider the appropriate remedy for factual allegations not yet proven. Discovery has not concluded. Summary judgment motions have not been filed. At this stage, the Court can only evaluate the parties' pleadings, without the aid of evidence. The only question the Court now considers is whether the Bankruptcy Code may afford the relief Plaintiffs' seek. Section 105 may provide the relief Plaintiffs seek for GMAC's alleged nationwide, systematic violations of Bankruptcy Rules, court orders, and the Bankruptcy Code provisions implicated by the court orders.[9]

---

[9] The Court previously rejected GMAC's private right of action argument. *In re Rodriguez*, 396 B.R. 436. Much of the Court's analysis reiterates the Court's *In re Rodriguez* Memorandum Opinion.

### i. Private Right of Action

GMAC's private right of action argument is not novel.  Other defendants have raised the same argument against complaints for violation of the discharge injunction, a confirmed plan, and an order confirming a plan. *See Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. ((In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1062 (5th Cir. 1997) (noting that the defendant "argues that any affirmative right conferred by 11 U.S.C. § 524(a) does not confer an independent federal cause of action."); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000) ("The appellee, however, disputes the existence of an implied right of action [for violation of § 524(a)] based upon the four-factor analysis used to determine Congress's intent, set out by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975)."). Both the *Gypsum* and *Bessette* Circuit Courts rejected the defendant's argument.

The "private right of action" argument is a red herring.  In the *Cort v. Ash* line of cases, plaintiffs sought relief from the statute allegedly violated.  The plaintiffs asked the court to carve out of the particular statutory provision a remedy that the statute did not provide.  For example, in *Cort*, the plaintiffs contended that the defendants violated 18 U.S.C. § 610, a criminal statute that prohibited corporations from making certain contributions to Presidential or Vice Presidential elections. *Cort*, 422 U.S. at 68.  The plaintiffs asked the court to create an implied private cause of action for damages out of the same statute the defendants allegedly violated, 18 U.S.C. § 610. *Id.*

In this adversary proceeding, Plaintiffs do not ask the court to imply a private right of action from the Code provisions allegedly violated.  The complaint is, at its heart, a complaint seeking relief under the court's contempt authority and § 105, not any particular provision of chapter 13.  There is a distinct difference between asking the Court to create a private right of

34

action out of a statutory provision based on conduct that allegedly violated that statutory provision, and asking the court to enforce a court order through a statutory provision that expressly authorizes courts to issue any orders or judgments necessary to enforce court orders and Code provisions, based on conduct that violated Code provisions incorporated by a court order.

In *Bessette*, the First Circuit considered a defense identical to GMAC's. *Bessette*, 230 F.3d 439. In *Bessette*, a class alleged that defendants violated the discharge injunction by coercing debtor class members into signing reaffirmation agreements with respect to pre-petition, discharged debt. *Id.* at 442. The *Bessette* defendants, like GMAC, alleged that § 524, the discharge injunction, did not create a private right of action. *Id.* at 444. The First Circuit emphatically rejected the defendants' argument, holding that the plaintiffs could bring private causes of action for violations of Bankruptcy Code provisions that create or enforce important rights. *Id.* at 444–45. The *Bessette* Court held:

> As this Court has previously recognized, "[s]ection 105(a) empowers the bankruptcy court to exercise its equitable powers—where 'necessary' or 'appropriate'—to facilitate the implementation of other Bankruptcy Code provisions." *Noonan v. Secretary of Health & Human Servs. (In re Ludlow Hosp. Soc'y, Inc.)*, 124 F.3d 22, 27 (1st Cir. 1997); *see also SPM Mfg. Corp. v. Stern (In re SPM Mfg. Corp.)*, 984 F. 2d 1305, 1311 (1st Cir. 1993); *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991). While it is true that the considerable discretion conferred on courts sitting in bankruptcy by § 105 is not unlimited, in that it is not 'a roving commission to do equity,' *Noonan*, 124 F.3d at 27 (quoting *Chiasson v. J. Louis Matherne & Assocs.*, 4 F.3d 1329, 1334 (5th Cir. 1993)), a court is well within its authority if it exercises its equitable powers to enforce a specific code provision, *see id.; SPM MFG.*, 984 F.2d at 1311, such as § 524. Thus, § 105 does not itself create a private right of action, but a court may invoke § 105(a) "if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code," *Noonan*, 124 F.3d at 28, so long as the court acts consistent with the Code and does not alter the Code's distribution of other substantive rights, *see id.; SPM Mfg.*, 984 F.2d at 1311 . . .
>
> Against this background it is clear . . . that a bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order

damages . . . if the merits so require.   Consistent with this determination, bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have engaged in conduct that violates § 524. *See, e.g., In re Hardy*, 97 F.3d at 1389–90; *In re Elias* 98 B.R. at 337; *Cherry*, 247 B.R. at 191; *In re Arnold*, 206 B.R. 560, 568 (Bankr. N.D. Ala. 1997); *Wiley v. Mason (In re Wiley)*, 224 B.R. 58, 66 (Bankr. N.D. Ill. 1998) (denying motion to dismiss), *vacated on other grounds*, 237 B.R. 677 (Bankr. N.D. Ill. 1999 (finding class representative inadequate because she suffered no injury); *Mathews*, 184 B.R. at 599–601; *In re Bowling*, 116 B.R. 659, 664–65 (Bankr. S.D. Ind. 1990); *cf. In re Rosteck*, 899 F.2d 694, 697 (7th Cir. 1990) (affirming sanction for violation of § 524 without reference to § 105 contempt powers). Therefore, we hold that § 524 is enforceable through § 105. *See Malone*, 245 B.R. at 395.

*Id.* at 445.

As the First Circuit noted, the Court "see[s] no reason to jump into the fray with the complex analysis required by *Cort v. Ash* when a remedy is readily and expressly available through another section of the Bankruptcy Code, namely, § 105(a)." *Id.* at 444. The First Circuit's *Bessette* holding is consistent with § 105's plain language and recent Supreme Court and Fifth Circuit precedent discussed later in this Memorandum Opinion. *Marrama*, 549 U.S. 373–76; *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 356 n. 1 (5th Cir. 2008).

### ii. Section 105 and Inherent Authority

GMAC also contends that § 105 does not authorize the remedies Plaintiffs seek.  GMAC contends that a court's § 105 authority is limited to civil contempt sanctions and civil contempt sanctions cannot be punitive or issued by a court other than the court in which the contemptuous conduct allegedly occurred.  GMAC's argument is based on the assumption that § 105 is but a statutory codification and supplantation of bankruptcy courts' inherent civil contempt authority.  GMAC's assumption is incorrect.  The Court's prior Memorandum Opinions have explained the distinction between bankruptcy courts' inherent authority and § 105 authority. *In re Rodriguez*, 396 B.R. 436.

36

Bankruptcy Courts have both inherent contempt authority and equitable authority under § 105. The two are not indistinguishable. The former is inherent to all courts, while the latter is rooted in statute. Bankruptcy courts have inherent civil contempt authority. *In re Yorkshire,* 54 F. 3d 328, 332 (5th Cir. 2008) ("It is well-settled that a federal [bankruptcy] court, acting under inherent authority, may impose sanctions against litigants or lawyers . . .); *Jove Eng'g,* 92 F.3d 1539, 1553 (11th Cir. 1996). "In a nutshell: Section 105 aside, courts have inherent contempt powers in all proceedings, including bankruptcy, to 'achieve the orderly and expeditious disposition of cases.'" *Id.* (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). The Court's "inherent powers arise independently of any statute or rule." *Jove Eng'g,* 92 F.3d at 1553.

Section 105 of the Bankruptcy Code provides independent statutory contempt and other authority. *Id.* ("Distinct from the court's inherent powers are statutory contempt powers that § 105(a) grants in the bankruptcy context."); *In re Rimsat, Ltd.,* 212 F.3d 1039, 1049 (7th Cir. 2000) ("To begin with, the bankruptcy court acted pursuant to its statutory authority under 11 U.S.C. § 105(a) as well as its inherent powers.").

Section 105's plain language grants bankruptcy courts broad remedial authority. Section 105(a) provides:

> The Court may issue ***any order, process, or judgment that is necessary or appropriate*** to carry out the provision of this title. No provisions of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination ***necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process.***

11 U.S.C. § 105(a) (emphasis added).

Section 105(a) provides that the court may issue *any* "judgment" necessary or appropriate to carry out requirements of the Bankruptcy Code. Section 105 does not require a court to use the least restrictive means to carry out the requirements of the Code. Section 105(a) does not say that the Court's authority is limited to orders or judgments *necessary* to carry out the Code. Rather, Congress explicitly added to the statute deferential, discretionary language with "or appropriate." Courts must give effect to a statute's plain language. *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989). The Supreme Court has emphasized the Court's broad authority under § 105 and the need to apply § 105 according to its terms. In *Marrama*, the Supreme Court held that, under § 105, bankruptcy courts have "broad authority . . . to take any action that is necessary or appropriate 'to prevent the abuse of process.'" *Marrama*, 549 U.S. at 373–76.

The difference between inherent and § 105 authority are further evidenced by the wide array of remedies, including damage remedies available in a private cause of action, courts have granted pursuant to § 105. *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997) ("Reading [§ 105(a)] under its plain meaning, we conclude that a bankruptcy court can issue *any* order, *including* a civil contempt order, necessary to carry out the provisions of the bankruptcy code . . . which compensate a debtor for damages suffered as a result of a creditor's violation of a post-confirmation injunction under 11 U.S.C. § 1141 . . .") (emphasis added); *In re Nat'l Gypsum Co.*, 118 F.3d at 1063 (noting that the "discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt"); *Jove Eng'g, Inc.*, 92 F.3d at 1554 ("Therefore, the plain meaning of § 105(a) encompasses *any* type of order, whether injunctive, compensatory or punitive, as long as it is 'necessary or appropriate to carry out the

provisions of the Bankruptcy Code.'"). *See also In re Gervin*, 337 B.R. 854, 857–58 (Bankr. W.D. Tex. 2005); *In re Harris*, 297 B.R. 61, 70–71 (Bankr. N.D. Miss. 2003).

### iii. Application of § 105 to the Facts Pled

Exercise of the Court's § 105 power to provide some or all of the remedies Plaintiffs seek would be appropriate if Plaintiffs prove their pled facts. In a recent decision dealing with chapter 13 mortgage payments, the Fifth Circuit advised bankruptcy courts that they may use their § 105 authority to prohibit creditor abuses of the chapter 13 process. *Campbell*, 545 F.3d at 356 n. 1.

Courts have used § 105 to remedy violations of confirmed plans. A bankruptcy court's authority under § 105 to enforce its own orders cannot be reasonably questioned. *Am. Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complaint for losses sustained.") (quoting *U.S. v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)); *Musslewhite v. O'Quinn (In re Musslewhite)*, 270 B.R. 72, 79 (S.D. Tex. 2000) ("The Bankruptcy Court's finding of civil contempt and that Court's exercise of discretion to impose sanctions to compensate O'Quinn for Debtor's repeated and blatant violations of the Bankruptcy Court's various orders are not clearly erroneous."); *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289, 317 (Bankr. S.D. Tex. 2007) (holding that "the Defendant has violated the Court's order approving the Amended Plan, and the Defendant may be sanctioned for civil contempt"); *Tate v. NationsBanc Mortgage Corp. (In re Tate)*, 253 B.R. 653, 669 (Bankr. W.D. N.C. 2000). This Court recently considered the extent to which the Bankruptcy Code provides relief for violations of an order confirming a plan. *In re Padilla*, 379 B.R. at 643. The Court also

held that the Court had authority under § 105 to enforce an order confirming a chapter 13 plan. *Id.*

Bankruptcy Courts may not use § 105 to create new substantive rights or contravene specific Code provisions. *U.S. v. Waindel (In re Waindel)*, 65 F.3d 1307, 1309 (5th Cir. 1995). The Court previously considered the extent to which a remedy for alleged improper charging and collection of fees and costs would be consistent with the Bankruptcy Code. *In re Padilla*, 379 B.R. 643. In *Padilla*, the defendant mortgage lender contended that any holding that prohibited a mortgage lender from charging and collecting fees and costs without court approval would conflict with § 1322(b)(2). *Id.* at 657. The Court rejected the argument, holding:

> However, Plaintiffs correctly note that *Nobelman* did not hold that § 1322(b)(2) immunized all mortgage rights from the effects of the Bankruptcy Code. The automatic stay limits a lender's ability to exercise contractual foreclosure rights. *Nobelman*, 508 U.S. at 330, 113 S. Ct. 2106. Additionally, § 1322(b)(5) authorizes debtors to cure defaults over time through a plan, despite contrary provisions within a lender's contract. *Id.* Thus, specific provisions like the automatic stay and § 1322(b)(5) may limit a lender's ability to exercise their rights. *Id.* However, those limits "are independent of the debtor's plan or otherwise outside § 1322(b)(2)'s prohibition." *Id.*

*Id.* at 660. Section 1322(b)(2) prohibits a *plan* from modifying a mortgage lender's contract rights. Section 1322(b)(2) does not override every other provision of the Bankruptcy Code.

A prohibition against creating new substantive rights is not a direction to gut § 105 in a manner that precludes *enforcement* of rights. Allowing debtors to seek damages for violations of court orders confirming chapter 13 plans *enforces* rights. This use of § 105 creates no rights. Rather, this use is a *remedy* to *enforce* rights incorporated by the confirmed plans (particularly § 1322(b)(5)), and to protect the promised fresh start. Consistent with § 105, the remedy may take the form of a private right of action. Section 105's plain language authorizes bankruptcy

courts to issue any judgments necessary *or* appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a) (emphasis added).

Bankruptcy Code provisions, Bankruptcy Rules, and Court orders may not be violated without recourse. The Court need not create an implied private right of action to remedy such violations. Congress created a remedy through § 105(a). Precedent leaves no question that this Court may remedy such violations through its inherent contempt authority and statutory authority under § 105.

The use of § 105 to remedy alleged violations of Bankruptcy Code provisions, Rules, and court orders, may be particularly appropriate in the context of a nationwide class action. The alternative to a class action seeking relief based on § 105 would be thousands of individual proceedings filed before dozens of different judges in multiple jurisdictions. The Supreme Court's *Chambers* and *Marrama* opinions stand for the proposition that an underlying purpose of § 105 is to afford bankruptcy courts the authority to avoid protracted and multifaceted litigation when the inevitable result of that litigation can be provided with one stroke pursuant to § 105.

In *Marrama*, the Supreme Court held that a bankruptcy court could use § 105 to dismiss a case directly without first allowing a debtor to engage in a futile conversion that would ultimately end with the same result. 549 U.S. 365. Marrama, a chapter 7 debtor, made numerous false statements in his schedules. *Id.* at 368. To avoid the consequences of these false statements, Marrama attempted to convert his case to a chapter 13 case pursuant to § 706(a). *Id.* at 368–69. Marrama argued that § 706(a) gave debtors an automatic right to convert a chapter 7 case to a case under chapter 13. *Id.* at 370. Despite the apparent right to convert provided by § 706(a), the Supreme Court held that the bankruptcy court could use § 105 to dismiss the case outright. *Id.* at 374–75. The Court reasoned that a converted case would also be subject to dismissal based on

Marrama's fraudulent conduct. *Id.* at 375. Accordingly, § 105 was "adequate to authorize an immediate denial of a motion to convert filed under § 706(a) in lieu of a conversion order that merely postpones the allowance of equivalent relief . . ." *Id.*

The Supreme Court's *Chambers* opinion was also rooted in the principle that courts should use equitable powers to avoid "extensive and needless satellite litigation . . ." *Chambers*, 501 U.S. at 51. In *Chambers*, the Supreme Court held that federal courts could use their inherent authority to sanction parties even though procedural rules would also provide a remedy. *Id.* at 46. In *Chambers*, the district court relied on its inherent authority to sanction Chambers for attempting to deprive the court of jurisdiction by fraud, filing false and frivolous pleadings, and engaging in delay, oppression, and harassment tactics. *Id.* at 41. Chambers argued that the district court could not use its inherent authority when other procedural rules, like Rule 11, existed to accomplish the same result. *Id.* at 42–43.

The Supreme Court rejected Chambers' contention, holding that procedural rules do not displace a court's inherent authority or preclude a court's exercise of its inherent authority when a procedural rule may also apply. *Id.* at 46 ("We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above."). Federal courts are not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules." *Id.* at 50. The Supreme Court held that a court's use of inherent authority is particularly warranted when it will avoid "extensive and needless satellite litigation, which is contrary to the aim of the Rules themselves." *Id.* at 51.

Though *Chambers* considered a court's ability to fashion an equitable remedy under its inherent authority rather than the § 105 authority, the Court finds *Chambers* equally applicable to

§ 105. A court's inherent authority and § 105 are both rooted in equitable concerns. Both exist to accomplish the same purpose: fashioning equitable remedies to curb abuses. Avoiding inefficient and unnecessary litigation is a factor of primary importance in any equitable consideration, whether under inherent authority or § 105.

The Seventh Circuit has applied *Chamber's* logic to the § 105 context and explicitly found that a bankruptcy court could sanction a party under § 105 even though Federal Rule of Bankruptcy Procedure 9011 was also applicable. *In re Rimsat, Ltd.*, 212 F.3d at 1049. The Seventh Circuit held:

> Moreover, a sanctioning court is not required to apply available statutes and procedural rules in a piecemeal fashion where only a broader source of authority is adequate to justify all the necessary sanctions. *Chambers*, 501 U.S. at 50–51, 111 S. Ct. 2123. The bankruptcy court was justified in resorting to 11 U.S.C. § 105(a) and its inherent powers in order to ensure that all the culpable parties received an appropriate sanction and did not abuse its discretion in declining to sanction Factor under Bankruptcy Rule 9011 or 7026.

*Id.*

Perhaps each member of the putative class could individually seek sanctions pursuant to Rule 9011 or inherent civil contempt authority from the court in which they filed their bankruptcy petition. But § 105 empowers this court to afford a remedy for the same conduct. Of course, prior to any exercise of such authority, this Court must be satisfied that Plaintiffs have demonstrated that the facts regarding the putative class justify class relief. The existence of subject matter jurisdiction only authorizes this Court to consider class relief; it does not pre-ordain the outcome.

### iv. Narrow Interpretations of § 105

The Court notes that other Circuits have held that § 105 may not be used to enforce Code provisions other than the automatic stay. *See Joubert v. ABN AMRO Mortgage Group, Inc. (In re*

*Joubert*), 411 F.3d 452 (3rd Cir. 2005); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000).  The *Walls* and *Pertuso* Courts held that debtors claiming violation of the discharge injunction could seek relief only through a contempt proceeding, not a private right of action seeking damages. *Id.* The Courts assumed that a bankruptcy court's § 105 authority was limited to civil contempt remedies. *Id.* Accordingly, a complaint seeking all the damages available in a private right of action could not be brought under § 105. *Id.*

Neither *Walls* nor *Pertuso* are binding on this Court.  This Court respectfully disagrees with the *Walls* and *Pertuso* courts and follows, as it must, the holdings of this Circuit's *Campbell* decision, and the First Circuit's *Bessette* decision. *Campbell*, 545 F.3d at 356 n.1; *Bessette*, 230 F.3d 439. Those holdings are more consistent with the Supreme Court's *Marrama* decision and the plain language of § 105.

Requiring Plaintiffs to seek civil contempt damages from their "home court" may be the more appropriate remedy and the only remedy authorized.  However, if Plaintiffs' allegations are proven, it may also be that mere civil contempt damages issued on a case-by-case basis from each individual "home court" is not sufficient to "carry out the provisions" of the Bankruptcy Code or "enforce or implement court orders or rules, or to prevent an abuse of process." Section 105 requires the Court to fashion a remedy sufficient to ensure that debtors and creditors comply with the Code and court orders.  Limiting parties to an inadequate remedy would contravene § 105's plain language and congressional intent. Section 105 requires the Court to consider what is "necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105.

Prior to the introduction of evidence at the class certification hearing, the Court cannot tell what remedy, if any, will be necessary or appropriate to ensure that GMAC and similarly

44

situated mortgage lenders do not flout Bankruptcy Code provisions, rules, and rights.  The Court only notes that, if Plaintiffs' allegations are proven, a class action judgment may be the only effective means of ensuring GMAC's compliance with the Code, Rules, and court orders.  The evidence may demonstrate that civil contempt sanctions are all that is necessary to ensure compliance.  The evidence may also demonstrate that Plaintiffs' allegations are unfounded and GMAC scrupulously complied with Bankruptcy Code provisions, Rules, and court orders.  The Court would be ignoring the plain congressional intent of § 105 and editing-out words from § 105 if the Court dismissed Plaintiffs' complaint at this early stage.  The Court cannot yet discern what is necessary or appropriate.  The story is yet to be told.  The Court only notes that Plaintiffs' allegations are sufficiently egregious, detailed, and "plausible" to afford Plaintiffs their day in court.

### v. Disgorgement

The Court has broad authority to order disgorgement of monies obtained in violation of court orders, Code provisions, and Rule 2016. *In re Padilla*, 379 B.R. at 667–68. To the extent that Plaintiffs seek relief for violation of Bankruptcy Rule 2016 and court orders approving the chapter 13 plans, Plaintiffs may be entitled to disgorgement of monies obtained through those violations.

### 2. Subject Matter Jurisdiction

The party asserting jurisdiction bears the burden of proof. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). When considering a Rule 12 motion to dismiss for lack of subject matter jurisdiction, the court may consider "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As*

*v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir. 2001) (citing *Barrera–Montenegro v. U.S.*, 74 F.3d 657, 659 (5th Cir. 1996)). The court "must accept all factual allegations in the plaintiff's complaint as true." *Id.* (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common senses." *Id.*

GMAC makes two jurisdictional arguments. First, GMAC contends that this Court only has jurisdiction over claims that could affect a bankruptcy estate and Plaintiffs' claims will not affect an estate because they arise from exempt property. Second, GMAC contends that bankruptcy courts lack subject matter jurisdiction over nationwide class action proceedings.

### A. Plaintiffs' Claims Need Not Affect the Canos' Bankruptcy Estate

GMAC's first jurisdictional argument assumes that a bankruptcy court's authority is limited to matters that fit within the Fifth Circuit's definition of "related to" matters. The Fifth Circuit has defined "related to" matters as those that could conceivably have an effect on a bankruptcy estate. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987). GMAC contends that Plaintiffs' claims will not affect any bankruptcy estates because the complaint concerns exempt property and seeks damages that will be paid to Plaintiffs individually rather than to bankruptcy estates. GMAC notes that Plaintiffs' claims arise from conduct relating to Plaintiffs' homesteads. As exempt property, the homesteads were not part of Plaintiffs'

bankruptcy estates.   GMAC also notes that, with the exception of the Canos, Plaintiffs' bankruptcy cases have been closed.  Any judgment awarded would not be paid to an estate.

Even if GMAC's "related to" arguments were correct, dismissal would not be proper. The Court's authority extends beyond "related to" matters.

### i. Subject Matter Jurisdiction Under 28 U.S.C. §§ 1334 and 157

The jurisdictional analysis must begin with consideration of whether a district court has jurisdiction over the bankruptcy matter.  Section 157(a) allows district courts to refer to the bankruptcy courts bankruptcy matters over which the district court has jurisdiction. 11 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for that district.").  The United States District Court's General Order of Reference automatically refers these matters to the bankruptcy judges for this district. *In re Referrals to Bankr. Judges*, General Order 2005–6 (S.D. Tex. March 10, 2005).

Section 1334 provides that district courts have subject matter jurisdiction over all "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  The three jurisdictional prongs have distinct meanings.

A matter is "related to" a case under title 11 if the adversary proceeding's outcome may "both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999). An adversary proceeding falls within the court's "related to" jurisdiction if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d at 93 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)). The possibility that a suit may ultimately have no effect on the estate is not enough

to conclude that there would be no *conceivable* effect. *Id.* "Certainty or even likelihood of such an effect is not a requirement." *Arnold v. Garlock*, 278 F.3d 426, 434 (5th Cir. 2001) (citing *Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 858 (5th Cir. 1999)).

Courts have not precisely defined what matters fall within a court's "arising under" and "arising in" jurisdiction.  However, Courts have made it clear that proceedings involving substantive bankruptcy rights and the integrity of the bankruptcy courts fall within this core jurisdiction.

Generally, a matter arises under title 11 "if it invokes a substantive right provided by title 11." *Southmark v. Coopers & Lybrand (In re Southmark)*, 163 F.3d 925, 930 (5th Cir. 1999); *In re Wood*, 825 F.2d at 97 ("If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding . . ."); *Bank United v. Manley*, 273 B.R. 229, 243 (N.D. Ala. 2001) ("The case law clearly holds that a proceeding invoking a substantive right under the Bankruptcy Code falls within the bankruptcy court's 'arising under' or core jurisdiction.") (citing *Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir. 2000)).

Generally, a matter arises in a case under title 11 if it, "by its nature, could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d at 97 ("If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding . . ."); *Geruschat v. Ernst & Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 260 (3d Cir. 2007) ("[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstances, could only arise in the context of a bankruptcy case.") (quoting *Stoe v. Flaherty*, 436 F.3d 209, 218 (3rd Cir. 2006)); *In re Southmark*, 163 F.3d at 930. The House Report leading to the 1978 Amendments specifies that the legislature intended for "arising under" to encompass the ability of the bankruptcy courts to "hear any matter under which a claim is made under a provision of

title 11." 1 COLLIER ON BANKRUPTCY ¶ 3.01[4][c][i] (15th ed. 2006) (citing H.R. REP. NO. 595 (1977)).

With respect to bankruptcy cases that remain open, the Fifth Circuit has held that "it is not necessary to distinguish between proceedings 'arising under', 'arising in a case under', or 'related to a case under', title 11." *In re Wood*, 825 F.2d at 93.  The Fifth Circuit noted that § 1334(b)'s language operates "conjunctively to define the scope of jurisdiction." *Id.* Consequently, with respect to cases that remain open, bankruptcy courts need only "determine whether a matter is at least 'related to' the bankruptcy." *In re Bass*, 171 F.3d at 1022 (citing *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995)); *In re Wood*, 825 F.2d at 93.

GMAC relies upon *Wood*'s language to contend that this Court lacks subject matter jurisdiction because Plaintiffs' claims will not affect a bankruptcy estate.  With the exception of one named Plaintiff, Plaintiffs have received chapter 13 discharges and no longer have pending bankruptcy cases.  Generally, after a bankruptcy case is closed, a bankruptcy estate no longer exists, and therefore, the bankruptcy court generally will not have subject matter jurisdiction. *In re Bass*, 171 F.3d at 1022.

Nevertheless, bankruptcy courts retain significant jurisdiction after a discharge order is issued and a case is closed over matters concerning the interpretation and enforcement of bankruptcy court orders and important substantive rights granted by the Bankruptcy Code.  Such matters fall within the Court's "arising in" and "arising under" jurisdiction.  The "arising in" and "arising under" prongs of § 1334 provide independent bases of jurisdiction. The Supreme Court and Fifth Circuit have explained that courts can exercise bankruptcy jurisdiction over matters

49

that "arise in" a bankruptcy case or "arise under" the Bankruptcy Code even when the matters are not "related to" a bankruptcy case.

If *Wood* ever had the meaning attributed by GMAC (and this Court does not believe that it did), such a meaning was effectively overruled this year by the Supreme Court. In *Travelers Indemnity*, the Supreme Court held that, post-discharge, a bankruptcy court has jurisdiction to interpret and enforce its own orders even though the bankruptcy case was closed and the claims would not affect the bankruptcy estate. *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195 (2009). In *Travelers*, the bankruptcy court, in 1986, issued an order approving a settlement with Travelers Insurance and enjoining present and future litigation against Travelers. *Id.* at 2199. Despite the bankruptcy court order, numerous plaintiffs filed state court actions against Travelers. *Id.* at 2200. In 2002, sixteen years after the bankruptcy court issued its original order, Travelers moved the court for an injunction against the state court actions. *Id.* The bankruptcy court granted the injunction. *Id.* at 2200–01. The plaintiffs appealed, in part, on jurisdictional grounds, contending that "a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the *res* of the bankruptcy estate." *Id.* at 2202. The Supreme Court rejected the plaintiffs' argument that the bankruptcy court's jurisdiction was limited to actions that could affect property of the estate. *Id.* at 2205. The Court held that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders." *Id.* (citing *Local Loan Co.*, 292 U.S. at 239).

The Fifth Circuit has also clarified that after a bankruptcy case is closed, a bankruptcy court nevertheless has subject matter jurisdiction to enforce court orders and to protect important debtor rights created by the Bankruptcy Code pursuant to § 1334's "arising in" or "arising

under" jurisdictional grants. *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056 (5th Cir. 1997).

In *Nat'l Gypsum*, defendants raised the same jurisdictional arguments raised by GMAC. *Id.* at 1062. Prior to the debtor's chapter 11 plan confirmation, defendant insurer had advanced funds on the debtor's behalf. *Id.* at 1059. Debtor's chapter 11 plan provided for the pre-petition advances. *Id.* After the bankruptcy court confirmed the debtor's plan and the debtor received a discharge, defendant insurer sent a demand letter for the pre-petition advances. *Id.* The debtor filed an adversary proceeding alleging that the defendant's conduct violated the confirmed plan and the discharge injunction. *Id.* at 1060. The Bankruptcy Court held that it had jurisdiction to consider the debtor's complaint because it involved the court's confirmation order. *Id.* Defendant appealed the Court's finding of subject matter jurisdiction, arguing that debtor's complaint was essentially an affirmative defense to a state court cause of action and therefore did not arise under title 11. *Id.* at 1062.

The *Gypsum* Court held that debtor's allegations that defendant violated the discharge injunction, confirmed plan, and confirmation order fell within the bankruptcy court's core jurisdiction. *In re Nat'l Gypsum Co.*, 118 F.3d at 1064. The Fifth Circuit had previously defined a core proceeding arising under title 11 as a proceeding that "invokes a substantive right provided by title 11." *In re Wood*, 825 F.2d at 97. As in the Cano's complaint, Gypsum's claims could not affect the Gypsum bankruptcy estate. The Gypsum estate had terminated upon confirmation of the plan. 11 U.S.C. § 1141(b). Nevertheless, the Fifth Circuit noted that the Court still had subject matter jurisdiction under the arising under prong of § 1334. *Id.* at 1062.

The jurisdictional analysis for post-discharge claims must take into account the consequence of a closed estate in order to give meaning to post-discharge rights and enforce

court orders.  Most post-discharge conduct will not affect an estate because an estate will no longer exist.  Nevertheless, the Bankruptcy Code protects debtors from certain post-discharge conduct and courts must be able to enforce their own orders post-discharge to ensure that the rights and obligations provided by the Code are honored. *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001) (holding that bankruptcy courts retain subject matter jurisdiction over a discharged debtor with respect to "matters pertaining to the implementation of the plan") (citing *In re Fairfield Cmtys. Inc.*, 142 F.3d 1093, 1095 (8th Cir. 1991)); *In re Nat'l Gypsum Co.*, 118 F.3d at 1063; *Bradley v. Barnes (In re Bradley)*, 989 F.2d 802, 804 (5th Cir. 1993) (holding that the bankruptcy court had "arising under" jurisdiction to consider whether defendant violated the anti-discrimination provision, post-discharge).

The *Gypsum* Court also cited numerous cases holding that complaints for violations of the discharge injunction, confirmed plan, and confirmation order fell within the court's arising under or arising in jurisdiction. *In re Nat'l Gypsum Co.*, 118 F.3d at 1063 (citing *In re Texaco*, 183 B.R. 937, 944 (Bankr. S.D.N.Y. 1995)) ("There can be no question that a proceeding such as this [motion for contempt], to enforce and construe a confirmation order issued by this Court in this case, constitutes a proceeding 'arising in or related to' a case under title 11."); *In re Pettibone Corp.*, 151 B.R. 166, 169–70 (Bankr. N.D. Ill. 1993); *In re Polysat*, 152 B.R. 886, 888 (Bankr. E.D. P.A. 1993) ("As the instant proceeding concerns the scope of the discharge injunction arising from Sections 524 and 1141 of the Code, it is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), or (O)."); *In re Jacobs*, 149 B.R. 983, 989 (Bankr. N.D. Okla. 1993); 4 COLLIER ON BANKRUPTCY ¶ 524.02[2][c] at 524–21 ("A proceeding to enforce the discharge injunction is a core proceeding under section 157(b)(2)(O) of title 28, and courts should readily

reopen a closed bankruptcy case to ensure that the essential purposes of the discharge are not undermined."). *See also*, *In re Toussaint*, 259 B.R. 96, 101 (Bankr. E.D. N.C. 2000).

This Court's *In re Padilla* decision previously considered a bankruptcy court's post-discharge subject matter jurisdiction over allegations of violations of orders confirming a plan and Rule 2016. *In re Padilla*, 379 B.R. at 653 n.4. The Court noted:

> "[I]t is well established that courts retain jurisdiction to enforce their own orders". *Koehler v. Grant*, 213 B.R. 567 (8th Cir. B.A.P. 1997) (citing *Shillitani v. U.S.*, 384 U.S. 364, 370, 86 S. Ct. 1531, 1535, 16 L. Ed. 2d 622 (1996); *Ex Parte Robinson*, 19 Wall. 505, 86 U.S. 505, 510, 22 L. Ed. 205 (1873); *In re Bradley*, 989 F.2d 802, 804 & n.3 (5th Cir. 1993); *In re Ragar*, 3 F.3d 1174, 1179 (8th Cir. 1993). The partial summary judgment motions in this case contain allegations that Wells Fargo and Novastar violated the court order confirming the Padillas' and Sanders' confirmed plans.
>
> The Fifth Circuit has also found that after a bankruptcy case is closed, subject matter jurisdiction remains in the Bankruptcy Court to assure that the rights afforded to a debtor by the Bankruptcy Code are fully vindicated. *In re Bradley*, 989 F.2d 802 (5th Cir. 1993). In *Bradley,* the Court held that the alleged post-discharge employment discrimination against a debtor under 11 U.S.C. § 525 mandated that the Court exercise its subject matter jurisdiction. *Id.* at 804. This case is analogous. If a lender could wait until the conclusion of a bankruptcy case—and then impose disallowed charges—the debtor's fresh start would not be fresh at all. It is well-recognized that a fresh start is a fundamental purpose of current bankruptcy law. *Marrama v. Citizens Bank of Massachusetts*, 127 S. Ct. 1105, 1115 (2007).

*Id.*

"While courts may choose to rely on 'related to' jurisdiction because it is the broadest category of federal bankruptcy jurisdiction when examining their own jurisdiction, it certainly is not incumbent upon them to do so, because, as occurred here, a party may argue and a court may decide that a proceeding falls within one of the narrower categories of jurisdiction, such as 'arising in' jurisdiction . . ." *In re Seven Fields*, 505 F.3d at 260; *In re Bradley*, 989 F.2d at 804

("Generally, jurisdiction over bankruptcy proceedings ceases with the closing of the bankruptcy estate, but Congress has stated that in some instances jurisdiction continues after the estate is closed because the proceeding would still 'arise under' title 11."); *In re Wood*, 825 F.2d at 96 ("Although the purpose of this language in section 1334(b) is to define conjunctively the scope of jurisdiction, each category has a distinguishable meaning."); *Bank United*, 273 B.R. at 243 ("The jurisdictional statutes offer three types of bankruptcy proceedings cognizable in the district courts, and in the bankruptcy courts by referral . . . [r]equiring the application of the *Pacor/Lemco Gypsum* test to all three types blurs the statutory distinction present among them."); *Noletto v. Nationsbanc Mortgage Corp. (In re Noletto)*, 244 B.R. 845, 849 (Bankr. S.D. Ala. 2000) ("To the extent that the defendants argue that there is not subject matter jurisdiction because these suits (as they relate to debtors in other courts) are not 'related to' the individual debtors in this Court, they ignore the language 'arising under' or 'arising in' a case under title 11 . . . [t]he three categories offer alternative bases of bankruptcy jurisdiction.").

### ii. Plaintiffs' Claims Fall Within the Court's "Arising In" and "Arising Under" Authority

GMAC contends that its mortgage contracts authorized GMAC to charge, collect, and allocate the fees and costs in the manner alleged. Plaintiffs do not dispute this contention. Rather, Plaintiffs' claims assume that, even if GMAC's mortgage contracts allowed them to engage in the collection practices alleged, the Bankruptcy Code, Bankruptcy Rules, and court orders did not.

A matter concerning the administration of a chapter 13 bankruptcy plan concerns matters that "by [their] nature, could arise only in the context of a bankruptcy case." *In re Southmark*, 163 F.3d at 930. Plaintiffs' claims would not exist but for Plaintiffs' bankruptcy cases. The Court cannot imagine a claim that could be better characterized as a claim that could only arise

54

in the context of a bankruptcy case.  Plaintiffs' claims fall under the Court's "arising in" jurisdiction.

The majority of Plaintiffs' claims also fall under the Court's "arising under" jurisdiction. Plaintiffs allege that GMAC charged, collected, and allocated fees and costs in violation of Rule 2016, the Court orders confirming Plaintiffs' plans, and a host of Bankruptcy Code rights incorporated by the orders, particularly the right to cure arrearages and maintain payments provided by § 1322(b)(5).  At its core, this complaint raises issues that implicate a fundamental right and purpose of the Bankruptcy Code: the fresh start. *Marrama*, 127 S.Ct. at 1115.  Section 1322(b)(5) and the confirmed plan bring debtors current on mortgage payments, providing the promised fresh start on home mortgage payments.  Accordingly, the right to enforce a confirmed plan is one of the most important rights afforded debtors by chapter 13.  The fresh start cannot be enforced without binding a creditor to the confirmed plan.

The Fifth Circuit has left no doubt that bankruptcy courts have "arising under" subject matter jurisdiction over adversary proceedings alleging violations of a confirmed plan. *Mackey v. M.C. Invs. (In re Martinez)*, 2000 WL 34508398 at *1 (5th Cir. Oct. 5, 2000) ("Mackey's action against Appellee claimed breach of the notice provisions of the confirmed plan . . . [w]hether the plan required such notice requires interpretation of the plan, which is a matter 'arising under title 11.'") (citing *In re Nat'l Gypsum Co.*, 118 F.3d at 1064); *In re Nat'l Gypsum Co.*, 118 F.3d at 1064 (holding that the bankruptcy court had "arising under" jurisdiction to consider whether defendant violated the court order confirming debtor's plan and imposing a discharge injunction); *In re Bradley*, 989 F.2d at 804 (holding that the bankruptcy court had "arising under" jurisdiction to consider whether defendant violated § 525, the anti-discrimination provision, post-discharge). This Court's *In re Padilla* decision previously found subject matter

jurisdiction over allegations of violations of confirmed plans and Rule 2016. *In re Padilla*, 379 B.R. at 653 n. 4.

Accordingly, the Court rejects GMAC's argument that the Court lacks subject matter jurisdiction because certain putative class members' claims could not affect a particular bankruptcy case. The Court has authority to consider Plaintiffs' claims based on the "arising in" and "arising under" prongs of bankruptcy jurisdiction.

### B. Nationwide Class Action Jurisdiction

GMAC makes two arguments with respect to the Court's jurisdiction over nationwide class actions. First, GMAC reasserts its argument that a court's jurisdiction is limited to matters that could conceivably have an effect on a bankruptcy case. As discussed above, GMAC's argument conflates the "related to" prong of bankruptcy jurisdiction with the "arising in" and "arising under" prongs. Second, GMAC contends that the District Court's General Order of Reference limits referrals to bankruptcy cases filed in the Southern District of Texas and adversary proceedings related to those bankruptcy cases. GMAC misconstrues the scope of bankruptcy court jurisdiction.

Questions regarding "the jurisdictional wonderland of bankruptcy" should begin by defining the jurisdiction of the district court. Elizabeth Warren & Jay L. Westbrook, *Class Actions for Post-Petition Wrongs: National Relief Against National Creditors*, 22 AM. BANKR. INST. J. 14 (March 2003); *Bank United v. Manley*, 273 B.R. 229, 234 (N.D. Ala. 2001) ("The jurisdictional statutes thus derivatively empower the bankruptcy courts, by first granting the district courts jurisdiction over bankruptcy cases and proceedings, and then authorizing the district courts to refer that jurisdiction to the bankruptcy courts."). Under §§ 1334(a) and (b), district courts have jurisdiction over all bankruptcy cases and civil proceedings "related to,"

"arising in," and "arising under" title 11. 28 U.S.C. § 1334(a) & (b). As discussed above, the Southern District of Texas's General Order of Reference refers all matters over which the District Court has bankruptcy jurisdiction to the bankruptcy judges. Pursuant to §§ 1334, 157, 151 and the General Order, bankruptcy judges operate as a unit of the District Court with authority to adjudicate all matters that fall within the district's court's bankruptcy jurisdiction. 28 U.S.C. §§ 1334, 157, & 151.

There is no question that federal district courts have jurisdiction over class actions based on federal claims. Nor is there any doubt that a bankruptcy court has authority over class claims filed against a single debtor. *In re Am. Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988); *Birting Fisheries, Inc. v. Lane (In re Birting Fisheries, Inc.)*, 92 F.3d 939 (9th Cir. 1996); *In re Charter Co.*, 876 F.2d 866 (11th Cir. 1989); *Reid v. White Motor Corp.*, 886 F.2d 1462 (6th Cir. 1989); *In re Craft*, 321 B.R. 189 (Bankr. N.D. Tex. 2005). Implementation of Federal Rule of Bankruptcy Procedure 9023, which incorporates Rule 23 of the Federal Rule of Procedure, also implies that bankruptcy courts have authority over nationwide class actions. FED. R. BANKR. PROC. 9023; *In re Am. Reserve Corp.*, 840 F.2d at 492. Nevertheless, GMAC contends that there is something different about nationwide class action adversaries filed by a debtor as the named plaintiff against a single creditor. GMAC's position is inconsistent with Fifth Circuit precedent and the plain language of the statutory provisions that grant bankruptcy jurisdiction.

The Fifth Circuit has implied that bankruptcy courts have jurisdiction over nationwide bankruptcy class actions. *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970 (5th Cir. 2000). In *Bolin*, a nationwide class of former debtors sought to certify a class asserting claims based on Sears' alleged unlawful attempts to collect discharged debts. *Id.* at 972. The District Court certified the nationwide class and Sears appealed. *Id.* at 973. The Fifth Circuit vacated the District Court's

certification decision, but it did so based on the certification requirements of Rule 23 rather than an absence of subject matter jurisdiction. *Id.* at 979. Although the Fifth Circuit did not expressly discuss the District Court's subject matter jurisdiction, this Court must infer that the Fifth Circuit did not find the District Court's exercise of jurisdiction objectionable. The Fifth Circuit had a duty to consider the District Court's subject matter jurisdiction. *Travelers Indemnity Co.*, 129 S. Ct. at 2203 ("[T]he Court of Appeals would indeed have been duty bound to consider whether the Bankruptcy Court had acted beyond its subject-matter jurisdiction.") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006)). Rather than dismissing the case, the Fifth Circuit remanded the certification question back to the District Court. *Id.*

The Fifth Circuit's *Bolin* decision is consistent with the plain language of §§ 1334 and 157. Nothing within §§ 1334 or 157 ties bankruptcy jurisdiction over debtor adversary proceedings to the location of the debtor's bankruptcy case. The jurisdictional test for bankruptcy court jurisdiction is not whether each cause of action relates to or arises in or under an individual bankruptcy case. The test is whether each cause of action relates to or arises in or under *any* bankruptcy case. Adversary proceedings are not filed in bankruptcy cases. Adversary proceedings are filed separately from a bankruptcy case. An adversary proceeding can be filed long after a bankruptcy case has been filed and even after a bankruptcy case has been closed. An adversary proceeding is given its own adversary proceeding number. The docket sheet for an adversary proceeding shows a case relationship solely for administrative—not jurisdictional—reasons. A docket sheet itself can neither create nor destroy jurisdiction. As the Third Circuit, in an Opinion issued from a panel including now Justice Alito, succinctly stated:

> [Section] 1334(b) does not confer "related to" jurisdiction only upon the specific district court presently exercising jurisdiction over a particular bankruptcy case "under title 11."

Instead, the district courts *generally* enjoy § 1334(b)'s grant of "related to" bankruptcy jurisdiction. *All* district courts are empowered by the statute to hear cases "related to" specific bankruptcies pending in other district courts.

*Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1211–12 (3rd Cir. 1991). *See also, In re Rodriguez*, 396 B.R. at 454–55; *Morrison v. Amway Corp. (In re Morrison)*, 2009 WL 1856064, at *10–11 (Bankr. S.D. Tex. June 26, 2009).

Accordingly, § 1334(b) grants subject matter jurisdiction over any debtor claims that fall within the court's "related to," "arising in," or "arising under" jurisdiction, regardless of where the claimant's bankruptcy petition was filed. As Professors Warren and Westbrook concluded:

> Because there is no limitation on the district court's power to establish a national class even though venue is proper only with regard to the class representatives, there is no limitation on the bankruptcy court's power to exercise that jurisdiction within the constraints of § 157 of Title 28. The concern about "bankruptcy" jurisdiction over a multi-case, multi-district class is a bad pun. The issue is bankruptcy law jurisdiction, not bankruptcy court jurisdiction. As with any other class action, if venue is proper for the class representatives in a particular court, a class can be certified that includes all those claimants who would have been required to bring individual actions in a number of other federal district courts as a matter of venue. There is nothing about the debtor-protection side of bankruptcy that is any different.

*Class Actions for Post-Petition Wrongs: National Relief Against National Creditors*, 22 Mar Am. Bankr. Inst. J. 14 (2003). Nothing in § 1334 or any other provision of title 28 tethers a bankruptcy court's subject matter jurisdiction over adversary proceedings to the location of a bankruptcy case.

This Court is not alone in finding that bankruptcy courts have subject matter jurisdiction over nationwide class action proceedings, particularly over claims falling within the court's "arising in" or "arising under" jurisdiction. *Bank United*, 273 B.R. 229; *Powe v. Chrysler Fin. Corp., L.L.C. (In re Powe)*, 278 B.R. 539 (Bankr. S.D. Ala. 2002); *Sims v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457 (Bankr. E.D. Tenn. 2002); *In re Noletto*, 244 B.R. 845; *Aiello v. Providian Fin. Corp.*, 231 B.R. 693 (N.D. Ill. 1999); *Conley v. Sears, Roebuck & Co*, 222 B.R.

181, 185–86 (D. Mass. 1998); *Coggin v. Sears, Roebuck & Co. (In re Coggin)*, 155 B.R. 934 (Bankr. E.D. N.C. 1993).

The fact that some members of the putative class have or had bankruptcy cases pending in other districts does not impact the jurisdictional analysis. Venue provisions may mandate dismissal of an "arising in" or "arising under" claim brought before this Court on an individual versus class basis. But subject matter jurisdiction is distinct from venue. The only question presented is whether Plaintiffs' claims fall within § 1334's grant of bankruptcy jurisdiction.

Plaintiffs' claims are based on alleged violations of Bankruptcy Code provisions, Bankruptcy Rules, and bankruptcy court orders. The claims could only arise in the context of a bankruptcy case and, in part, are based on substantive rights provided by the Bankruptcy Code. Accordingly, the claims fall within § 1334's "arising in" and "arising under" jurisdiction. All of plaintiffs' claims fall under the "arising in" and "arising under" prongs of § 1334. Nothing within the jurisdictional provisions or the General Order of Reference adds an additional requirement that "arising in" and "arising under" claims be tied to any particular bankruptcy case within any particular jurisdiction. As the Third Circuit noted, section "1334(b) does not confer 'related to' jurisdiction only upon the specific district court presently exercising jurisdiction over a particular bankruptcy case 'under title 11.'" *Mar. Elec. Co.*, 959 F.2d at 1211–12. Section 1334 also does not confer "arising in" or "arising under" jurisdiction only upon a specific district court exercising jurisdiction over a particular bankruptcy case. "*All* district courts are empowered by the statute to hear cases 'related to' specific bankruptcies pending in other district courts." *Id.* All district courts are similarly empowered by § 1334 to hear cases "arising in" and "arising under" specific bankruptcies pending in other district courts. Indeed, as set forth in more detail below,

28 U.S.C. § 1409 mandates that the venue of certain adversary proceedings be within a district court that is not hearing the main bankruptcy case. 28 U.S.C. §§ 1409(b) & (d).

### i. Cases Finding No Subject Matter Jurisdiction Over National Class Actions

GMAC cites opinions holding that bankruptcy courts do not have jurisdiction over nationwide class action lawsuits. The cited opinions are based on three lines of reasoning: (a) section 1134(e) vests the "home court" with exclusive jurisdiction over adversary proceedings involving debtors; (b) bankruptcy court jurisdiction over adversary proceedings is limited to adversaries that are "related to" a bankruptcy case filed within that court; and (c) contempt sanctions can only be issued by the court that issued the order that was violated.

### a. 28 U.S.C. § 1334(e)

One line of cases is based on a restrictive interpretation of § 1334(e).[10] *Williams v. Sears, Roebuck & Co.*, 244 B.R. 858, 862–66 (S.D. Ga. 2000); *Beck v. Gold Key Lease, Inc. (In re Beck)*, 283 B.R. 163, 175 n. 18 (Bankr. E.D. Pa. 2002). Section 1334(e)(1) provides that the district court in which a bankruptcy case is commenced "shall have exclusive jurisdiction . . . of property of the estate." 28 U.S.C. § 1334(e)(1). "Property of the estate" is defined to include causes of action owned by the debtor on the petition date. 11 U.S.C. § 541(a); *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008). The cited cases incorporate into § 1334(e)(1) the § 541 definition of "property of the estate" to reason that § 1334(e) requires all of a debtor's claims to be heard in the court in which the debtor's bankruptcy case was filed. Accordingly, the courts reason that a bankruptcy

---

[10] Section 1334(e) provides: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—

    (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

    (2) over all claims or causes of action that involve construction section 327 of title 11, United States Code, or rule relating to disclosure requirements under section 327."

28 U.S.C. § 1334(e).

court lacks jurisdiction over a class action brought on behalf of debtors who filed cases in districts other than the district in which the adversary was filed. *Williams*, 244 B.R. 858; *In re Beck*, 283 B.R. 163.

This Court agrees that the home court has exclusive control over property of the estate. However, control over property of the estate is distinct from determining whether rights in a lawsuit are meritorious. Analysis of the venue and jurisdictional statutes clarify that § 1334(e) does not vest the home court with exclusive jurisdiction over determining rights relating to lawsuits that are property of estate. As Judge Margaret Mahoney's well-reasoned *Noletto* opinion explained, the restrictive view of § 1334(e) would render removal, abstention, and venue provisions meaningless. *In re Noletto*, 244 B.R. at 851–53. Numerous venue and jurisdiction provisions mandate that a court other than the home court adjudicate suits involving property of the estate.

Section 1452 mandates parties to remove a case originally filed in a state court to the district court for the district in which the state court suit was pending. 28 U.S.C § 1452. For example, "A" may file a state court lawsuit against "B" in Illinois. If "B" then files for bankruptcy in Texas, the state court lawsuit may be removed to federal court. However, § 1452 requires the lawsuit to be removed to the federal court in Illinois, not the Texas bankruptcy court.

Section 1334(c) provides for permissive and mandatory abstention of certain state-law claims. 28 U.S.C. § 1334(c). If abstention is warranted, then the adversary proceeding is remanded back to a state court. "'Exclusive jurisdiction' would preclude abstention when most appropriate." *In re Noletto*, 244 B.R. at 852.

Section 1409 mandates venues other than the home court for certain adversary proceedings. 28 U.S.C. § 1409. Section 1409(b) mandates that certain adversaries be filed "only

in the district court for the district in which the defendant resides." 11 U.S.C. § 1409(b).
Subsections (c)–(d) similarly limit venue to prescribed district courts. 11 U.S.C. § 1409(c)–(d).
If the restrictive view of § 1334(e) were accepted, than all adversary proceedings would have to
be filed in the district in which the bankruptcy case was filed. The venue provisions would be
meaningless and unworkable. *In re Noletto*, 244 B.R. at 853.

As Judge Mahoney, noted, courts should avoid statutory interpretations that render other
statutory provisions superfluous. *In re Noletto*, 244 B.R. at 849 (citing *Hohn v. U.S.*, 524 U.S.
236, 118 S. Ct. 1969, 1976, 141 L. Ed. 2d 242 (1998)). Adopting the restrictive view of
§ 1334(e) would render a host of jurisdictional and venue provisions meaningless.

### b. "Related to" Cases

A second line of cases arise from the Western District of Washington and the Northern
District of Illinois and are based either on an assumption about bankruptcy court jurisdiction that
is not supported by title 28 or involve only "related to" matters. *Cline v. First Nationwide
Mortgage Corp. (In re Cline)*, 282 B.R. 686 (W.D. Wash. 2002); *Knox v. Sunstar Acceptance
Corp. (In re Know)*, 237 B.R. 687, 693–95 (Bankr. N.D. Ill. 1999); *Lenior v. GE Capital Corp.
(In re Lenior)*, 231 B.R. 662, 667–68 (Bankr. N.D. Ill. 1999); *Wiley v. Mason (In re Wiley)*, 224
B.R. 58, 64 (Bankr. N.D. Ill. 1998); *Simmons v. Ford Motor Credit Co. (In re Simmons)*, 237
B.R. 672, 676 (Bankr. N.D. Ill. 1999); *Fisher v. Fed. Nat'l Mortgage Ass'n (In re Fisher)*, 151
B.R. 895, 897–98 (Bankr. N.D. Ill. 1993).

The above cases confuse bankruptcy jurisdiction in district courts with a bankruptcy
judge's authority. As set forth in detail above, all bankruptcy jurisdiction originally vests with
the United States district courts. Bankruptcy judges act as units of the district courts. 28 U.S.C.
§ 151 ("In each judicial district, the bankruptcy judges in regular active service shall constitute a

unit of the district court . . . Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit or proceeding…").

It is beyond cavil that the United States District Court for the Southern District of Texas has jurisdiction over this class action under § 1334. The courts referenced above mistakenly assumed that jurisdiction of the district court and the authority of a bankruptcy judge are distinct concepts. In fact, a bankruptcy judge's authority must be viewed from the perspective of the district court's jurisdiction. 28 U.S.C. §§ 1334, 157, & 151. Many of the cases also ignored the plain language of §§ 1334 and 157 and simply conclude that allowing bankruptcy courts to adjudicate nationwide class actions "impermissibly broadens the bankruptcy court's jurisdictional purpose—to serve as a single forum to resolve all claims against the estate of the debtor." *In re Cline*, 282 B.R. at 694. In the context of bankruptcy court jurisdiction vesting with the district court, such a statement is a non-sequitor.

Congress alone has the privilege of implementing policy through statutes. The policy behind Rule 23 supports rather than cautions against bankruptcy court authority over nationwide class actions. The class action device was created so that numerous claims could be heard in a single forum to reduce costs and ensure the enforcement of claims that, alone, are not of sufficient pecuniary value to warrant a lawsuit. *In re Am. Reserve Corp.*, 840 F.2d at 489 ("[T]he class action provides compensation that cannot be achieved in any other way; although the costs of litigation may consume much of the benefit, the device still serves a deterrent function by ensuring that wrongdoers bear the costs of their activities.") (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–89, 100 S. Ct. 1166, 1173–74, 63 L. Ed. 2d 427 (1980)). Absent

bankruptcy jurisdiction over debtor class actions, "there might be no affordable universal redress for creditor bankruptcy abuses which could arise." *In re Noletto*, 244 B.R. at 850

Where the statutory language is clear, the Court must enforce the statute's plain language. *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989). As described above, § 1334's language is clear.  District Courts have subject matter jurisdiction over nationwide class actions, including those brought by debtors. *Bolin*, 231 F.3d 970. Bankruptcy courts, as units of the district courts, are vested with the authority to exercise the subject matter jurisdiction of the district courts. 28 U.S.C. § 157(d); Warren & Westbrook, *Class Actions for Post-Petition Wrongs: National Relief Against National Creditors*, 22 AM. BANKR. INST. J. 14 (March 2003).

### c. Civil Contempt

A third line of cases deals only with claims seeking civil contempt damages for violations of a particular court's order. *Singleton v. Wells Fargo Bank, N.A. (In re Singleton)*, 284 B.R. 322, 325 (D. R.I. 2002); *Nelson v. Providian Nat'l Bank (In re Nelson)*, 234 B.R. 528, 539 (Bankr. M.D. Fla. 1999).  The above cases found that the court lacked subject matter jurisdiction over the claims of absent class members because they sought damages for civil contempt based on violations of court orders issued by other courts.  The cases relied on authority holding that civil contempt damages for violations of a court order can only be sought from the court that issued the order.

Plaintiffs' claims seek damages, in part, for violations of orders confirming Plaintiffs' chapter 13 plans that were issued by courts outside the Southern District of Texas.  To the extent Plaintiffs seek damages for civil contempt arising out of the Court's inherent authority, the Court may lack authority.  However, Plaintiffs' claims are not dependent on this Court's inherent

contempt authority. Ultimately, Plaintiffs seek relief pursuant to § 105. As discussed in greater detail later in this Memorandum Opinion, the Court's remedial authority is distinct from the Court's inherent civil contempt authority. Section 105 provides broad, statutory authority to enter necessary orders and judgments to enforce provisions of the Bankruptcy Code. To the extent GMAC violated court orders confirming chapter 13 plans, the conduct also violated specific Bankruptcy Code provisions incorporated by the plans and Bankruptcy Rule 2016.

### ii. Prudential Concerns

GMAC's argument that bankruptcy jurisdiction over adversary proceedings is tied to the location of a bankruptcy case and many of the cases cited by GMAC are based on prudential concerns. Plaintiffs' claims may require this Court to consider other courts' orders—orders confirming Plaintiffs' chapter 13 plans—and issue orders and judgments that may affect a case pending in another court. Plaintiffs' claims may even constitute a "collateral attack" to the extent other courts have issued orders allowing the fees and costs at issue. The Court does not disregard these prudential concerns. Rather, the Court views the prudential-based arguments as premature. Subsection (b)(3)(B) of Rule 23 requires the court to consider the nature of other litigation "already begun or against class members." FED. R. CIV. P. 23(b)(3)(B); *In re Noletto*, 244 B.R. at 856–57. Where it is clear that this Court has authority over the named plaintiffs' claims, the Court will not dismiss the suit based on concerns more appropriately addressed during a class certification hearing.

For all the above reasons, the Court denies GMAC's motion to dismiss based on subject matter jurisdiction.

## Conclusion

For the reasons set forth above, the Court grants GMAC's Motion to Dismiss with respect to Plaintiffs' claims under §§ 362, 506, 524, 1322(a)(1), 1322(b)(5), 1326(c), 1327, and 1328 of the Bankruptcy Code. The Court denies the balance of GMAC's motion. A separate order will be issued.

SIGNED **August 10, 2009.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE